STATE OF NORTH CAROLINA

DAVIDSON COUNTY

FILED

2018 JAN 16 P 1: 53

DAVIDSON CO.

BY

IN THE GENERAL COURT OF JUSTICE
DISTRICT COURT DIVISION
18 CVD            18CV 00104

CAROLINE TRUCKING INC., )
                                    )
                    Plaintiff, )
                                    )
    vs.                          )
                                    )            **COMPLAINT**
CANAL INSURANCE COMPANY )
                                    )
                    Defendant )
                                    )
_____ )

PLAINTIFF, complaining of the Defendant does hereby allege and say:

## JURISDICTION AND VENUE

1.      The Plaintiff is a North Carolina Corporation organized pursuant to North Carolina General Statutes with its principal office located at 565 Mount Zion Church Road Stokesdale, NC 27357.  Plaintiff is engaged in the trucking industry.

2.      The Defendant is a South Carolina corporation with it principal office located in Greenville, SC.   Defendant's registered agent is Corporation Service Company located in Columbia, South Carolina.  A copy of Defendant's listing with the South Carolina Secretary of State is attached and referenced as exhibit "a"

3.      As the acts complained of herein occurred in North Carolina.  This Court is the proper forum to litigate the claims therein.

## FACTUAL BASIS

4.      The allegations contained in paragraphs 1 through 3 are realleged and incorporated therein as fully set forth.

5.      Plaintiff's President Andrew Davis (hereinafter referred to as Mr. Davis) contacted Southern Truck Insurance Company in Monroe, North Carolina in regards to procure liability and property loss insurance to cover one of Plaintiff's assets to wit: a 2008 Freightliner Road Tractor.

6.      Plaintiff, by and through Southern Truck Insurance, received a quote from Defendant.

**EXHIBIT A PART 2**

7.     Plaintiff accepted Defendant's offer of insurance coverage and on 9/26/2017 and entered into an agreement by electronic signature on 9/26/2017. A copy of the insurance agreement and policy is attached as Plaintiff's exhibit "b"

8.     On 11/1/2017, Plaintiff's 2008 Freightliner Road Tractor caught on fire at the principal office of the Plaintiff. The fire was reported to the local fire department by a neighbor named Jody Angell as the Plaintiff was away from the office at a restaurant entitled StokeRidge Bar and Grille.

9.     Mr. Davis discovered that the 2008 Freightliner Road Tractor was on fire when he left the restaurant and checked his voicemail on the phone located in his personal vehicle.

10.    The 2008 Freightliner Road Tractor was parked directly beside the residence of Mr. Davis and in front of a storage building where personal items of Mr. Davis and his family was stored. Luckily neither the residence of Mr. Davis nor the storage building was damaged.

11.    On 11/2/2017, Mr. Davis contacted Southern Truck Insurance Company to report his loss and talked to an employee of said company who informed Mr. Davis that he was to contact Defendant directly to report Plaintiff's loss.

12.    Mr. Davis contacted Defendant on 11/2/2017 and spoke to a representative who, upon information and belief did not inform Mr. Davis of her name and tendered to said representative the policy number of the insurance policy and that a loss had been incurred by fire.

13.    The unidentified representative informed Mr. Davis that he would be contacted by a claims adjuster.

14.    On or about 11/6/2017 Mr. Davis received a phone call from Matt Brodack. Mr. Brodack requested a fire report from the fire department and all documentation in regards to parts and service performed on the 2008 Freightliner Road Tractor. Mr. Davis informed Mr. Brodack that the engine of the 2008 Freightliner had been rebuilt by a friend of Mr. Davis who performed the rebuild on his own personal time. Matt Brodack told the Plaintiff that he would report back to Mr. Davis once he had received the fire report.

15.    On or about 11/9/2017 Mr. Davis contacted Mr. Brodack if he had received the fire report of which Mr. Brodack replied that he had not. Mr. Davis retrieved a fire report from the Stokesdale Fire Department on or about the same day and contacted his friend in regards to the parts list for the engine rebuild. A copy of the parts list is attached as exhibit "c."

16.    On 11/9/2017 Mr. Davis submitted the fire report and the parts list for the rebuild to Mr. Brodack by facsimile. Mr. Davis contacted Mr. Brodack by phone and confirmed that he had in fact received it and that it was being sent to the underwriting department of the Defendant to be finalized. A copy of the fire report is attached as exhibit "d."

17.     On or about 11/16/2017 Mr. Davis contacted Mr. Brodack to inquire as to the status of his claim.  Mr. Brodack informed Mr. Davis that the claim would not be finalized until a statement had been taken from Mr. Davis and an inspection was performed on the 2008 Freightliner Road Tractor by a company inspector.  Defendant's inspector contacted Mr. Davis to inform him that a forensic inspection would be conducted on the 2008 Freightliner Road Tractor and a statement would be taken from Mr. Davis on 11/17/2017.

18.     A forensic investigation was conducted and a statement was provided by Mr. Davis on 11/17/2017.  At that time the investigator requested not only bank and credit information for the Plaintiff, but Mr. Davis' personal bank and credit information.

19.     After two weeks, Mr. Davis made an inquiry from the investigator as to why Defendant needed this information and as to the clause and location in exhibit "b" where Mr. Davis agreed to divulge his personal and banking and credit affairs.  The investigator would not direct Mr. Davis to any sort of clause or paragraph in exhibit "b" and merely replied that "it is in the policy somewhere.

20.     After another week, Mr. Davis contacted Defendant's investigator the status of the claim. The investigator informed Plaintiff that he would have to contact Mr. Brodack.  Mr. Davis attempted to contact Mr. Brodack directly.

21.     On or about 12/4/2017 Mr. Davis was successful in his attempts to talk to Mr. Brodack where he informed the Plaintiff that a meeting would be held the following day and that Mr. Brodack would contact Mr. Davis as to the status of the claim.

22.     Mr. Davis called Mr. Brodack on 12/5/2017 and left a message that was not returned.

23.     Mr. Davis contacted Mr. Brodack on 12/6/2017 and Mr. Brodack informed Mr. Davis that his claim was denied.

24.     Counsel for the Plaintiff sent the Defendant, by and through its employee Matt Brodock an engagement letter attached as Plaintiff's exhibit "e."

25.     Plaintiff's counsel has not received any sort of response from the Defendant, its employees or assigns.

26.     Plaintiff's monetary loss for its asset is twenty five thousand dollars ($25,000.00.) Plaintiff's loss does not include losses for downtime and income to the company.

27.     Plaintiff contends that the Defendant has breached the contact between the parties for failure to perform as contracted.

28.     Plaintiff contends that Defendant's actions are unfair and deceptive, and that Defendant, its employees and assigns are liable under chapter 75 of the North Carolina General Statutes and that the Plaintiff should be awarded treble damages and the reasonable attorney fees of the Plaintiff.

**WHEREFOR THE PLAINTIFF RESPECTFULLY PRAYS:**

1) That this sworn complaint is accepted as an affidavit of the Plaintiff's President and Agent.

2) That the Plaintiff recovers compensatory damages in the amount of twenty-five thousand dollars ($25,000.00)

3) That the Court finds that the Defendant has committed acts in violation of Chapter 75 of the North Carolina General Statutes and judgment is rendered as such.

4) That the costs of this action, including the reasonable attorney fees of the Plaintiff are taxed to the Defendant.

5) For such other and further relief as the Court deems just and proper.

This _13th_ day of January, 2018

**VERIFICATION**

I, Andrew James Davis, first being duly sworn, do depose and say that I am the President and Registered Agent of the Plaintiff in the above styled action and that I have read and understood the foregoing Complaint and know the contents thereof, and that I know each allegation to be true.

_Andrew Jameson Davis_ President and Registered Agent of Caroline Trucking Inc

Andrew James Davis, President and Registered Agent of Caroline Trucking, Inc

Sworn to and subscribed before me

This the _____ day of _____, 2018.

_____

Notary Public

My commission expires: _____/_____/_____

## VERIFICATION BY NON-NOTARY

I, Chad C. Freeman, first being duly sworn, do depose and say that I witnessed the President and Registered Agent of Caroline Trucking, Inc. **Andrew James Davis** sign the foregoing pleading on 1/13/2018. I personally verified the identification of Andrew James Davis and he is an individual who is known to me.

_____
Chad C. Freeman, subscribing witness.

Sworn to and subscribed before me
This the _16TH_ day of _JAN_, 2018.

_____
Notary Public

My commission expires: _8 / 7 / 2019_

This 16th Day of January 2018

_____
Chad C. Freeman
Attorney for the Plaintiff
102 W. 1st Ave. Suite C
Lexington, NC 27292

**South Carolina Secretary of State Mark Hammond**

# Business Entities Online   *Exhibit "6"*

File, Search, and Retrieve Documents Electronically

---

# CANAL INSURANCE COMPANY

## Corporate Information

**Entity Type:** Corporation

**Status:** Good Standing

**Domestic/Foreign:** Domestic

**Incorporated State:** South Carolina

## Important Dates

**Effective Date:** 02/27/1939

**Expiration Date:** N/A

**Term End Date:** N/A

**Dissolved Date:** N/A

## Registered Agent

**Agent:** CORPORATION SERVICE COMPANY

**Address:** 1703 LAUREL STREET
COLUMBIA, South Carolina   29201

## Official Documents On File

| Filing Type | Filing Date |
|---|---|
| Change of Agent or Office | 12/30/2013 |
| Administrative dissolution in error | 09/21/2009 |
| Forfeiture | 08/12/2009 |
| Amendment | 02/29/2008 |
| Amendment | 06/26/2003 |
| Amendment | 11/16/1999 |
| Amendment | 11/16/1992 |
| Amendment | 10/20/1980 |
| Amendment | 12/31/1958 |
| Amendment | 12/31/1945 |
| Incorporation | 02/27/1939 |

---

For filing questions please contact us at **803-734-2158**

Copyright © 2018 State of South Carolina

*exhibt "b"*



# CANAL
Greenville, SC

# COVER LETTER

**Issue Date**: 09/26/2017

**TO:** SOUTHERN TRUCK INS SVCS INC - A0011485

**FROM:** Risk Placement Services, Inc. dba Edwin M. Rollins Company - 32036

**RE:**   Policy #   I-824170001-1
         Insured - Caroline Trucking Inc

Attached are documents that are part of the policy listed above.  Please reply to any follow-up
requirements shown below:

**Follow-up Notes**                                                    **Due Date**

New Version

**NOTE:** The insured or agent may go to Canal's website, www.canal-ins.com, and select the option "INSURED DOCS" to
print a Certificate of Insurance form for the policy of a Canal insured.

SOUTHERN TRUCK INS SVCS INC - A0011485
PO Box 1368, 104 Avon Street
MONROE, NC 28110

**OIL 86 CW 0114**                                                    **Page 1 of 1**



CHANGE NUMBER: 1
ISSUE DATE: 09/26/2017
PA Code #: A0011485

## PREMIUM SUMMARY

| POLICY GROUP NUMBER | POLICY CHANGES EFFECTIVE | COMPANY |
|---|---|---|
| I-824170001-1 | 09/25/2017 | Canal Insurance Company |
| NAMED INSURED  Caroline Trucking Inc | | AUTHORIZED REPRESENTATIVE |

| | Auto Liability | Physical Damage | General Liability | Cargo | Taxes on Fees | Total |
|---|---|---|---|---|---|---|
| POLICY NUMBER: I-824170001-1 | | | | | | |
| Total Written Premium | $ 6,660.98 | $ 1,572.00 | $ | $ 1,124.00 | | $ 9,356.98 |
| Total Deposit: | $ | $ | $ | $ | | $ |
| Taxes/Fees | | | | | | |
| | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ |
| | | | | | | $ |
| Total Taxes/Fees: | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ | $ 0.00 |

Down Payment Premium: $_____
Down Payment Taxes: $_____
The _____ remaining installment(s) will change by $_____

| Installment(s) | Due Date | Premium | Taxes | Policy Fees |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

IL 85 CW 1115

Page 1 of 1



# ACCOUNT SUMMARY

## Canal Insurance Company

STOCK COMPANY
P O BOX 7, GREENVILLE. SC 29602
400 EAST STONE AVENUE, GREENVILLE, SC 29601
(864) 242-5365

**ITEM ONE:** Named Insured and Mailing Address

☐ For additional named insureds see IL 04

Caroline Trucking Inc:
565 Mount Zion Church Rd
Stokesdale NC 27357

**Agent of the Insured:**

SOUTHERN TRUCK INS SVCS INC - A0011485
PO Box 1368
104 Avon Street
MONROE. NC 28110

**Phone #:**

**Physical Address (if different)**

565 Mount Zion Church Rd
Stokesdale. NC 27357

**General Agent:**

Risk Placement Services, Inc. dba Edwin M. Rollins
Company - 32036
2115 Rexford Rd Ste 520
Charlotte. NC 28211

**Policy Period:**

From 09/25/2017    at   12:01 A.M.    to   09/25/2018
at   12:01 AM   . standard time at your mailing address shown above.

**POLICY GROUP NUMBER:** I-824170001-1

| COVERAGE PART | POLICY NUMBER | PREMIUM | |
|---|---|---|---|
| COMMERCIAL AUTOMOBILE COVERAGE PART | I-824170001-1 | S | 8.232.98 |
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | | S | |
| COMMERCIAL INLAND MARINE COVERAGE PART | I-824170001-1 | S | 1.124.00 |

**TOTAL PREMIUM:**   S     9.356.98

**TAXES/FEES**

S _____
S _____
S _____
S _____
S _____
S _____

To Report a Loss
• Dial to lfree #1 (844)777-8323 or visit our
• Website: https://myrosins.com/claimshno!
• Contact insurer directly (see policy section)

RPSCHAR/SC/2017.09.28

IL 02 CW 1115             **Page 1 of 1**



# SCHEDULE OF FORMS AND ENDORSEMENTS

This schedule applies to the following:

COMMERCIAL AUTOMOBILE COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COMMERCIAL INLAND MARINE COVERAGE PART

**FORMS THAT APPLY TO THE COMMERCIAL AUTOMOBILE COVERAGE PART**
OIL 86 CW (1-2014) Cover Letter
IL 85 CW 1115 Premium Summary
IL 02 CW 1115 Account Summary
IL 03 CW 1115 Schedule of Forms and Endorsements
IA 128 CW 0509 Policyholder Notice Regarding State and Federal Filings
IA 90 NC 0210 NC Policyholder Notice - Uninsured Motorists
IA 95 NC 0715 NC Notice
IL 142 CW 1210 Notice of Adverse Action MVR
IL 143 CW 0911 Cancellation or Nonrenewal Consumer Notice
IL 90 CW 0906 Claims Reporting Information Notice
IL 92 CW 0615 Policyholder Notice - Availability of Loss Control Services
IL 99 CW 0812 Privacy Notice
IL P 001 01 04 US Treasury Departments OFAC Advisory Notice to Policyholders

**FORMS THAT APPLY TO THE COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**FORMS THAT APPLY TO THE COMMERCIAL INLAND MARINE COVERAGE PART**
OIL 86 CW (1-2014) Cover Letter
IL 85 CW 1115 Premium Summary
IL 02 CW 1115 Account Summary
IL 03 CW 1115 Schedule of Forms and Endorsements
IM 100 CW 0817 Policyholder Notice
IA 128 CW 0509 Policyholder Notice Regarding State and Federal Filings
IL 142 CW 1210 Notice of Adverse Action MVR
IL 90 CW 0906 Claims Reporting Information Notice
IL 99 CW 0812 Privacy Notice
IM 95 CW 0314 Conditional Exclusion of Terrorism (Disposition of TRIA)
IM 96 CW 0315 Terrorism Disclosure
IL 27 CW 0906 Signature Page Endorsement
IM 01 CW 1115 Motor Truck Cargo Declarations

**IL 03 CW 1115**

ISSUE DATE: 09/26/2017
EFFECTIVE DATE: 09/25/2017

POLICY GROUP NUMBER: I-824170001-1



# SCHEDULE OF FORMS AND ENDORSEMENTS

This schedule applies to the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

**FORMS THAT APPLY TO THE COMMERCIAL AUTOMOBILE COVERAGE PART**
IL 05 NC 0906 NC Common Policy Conditions
IL 27 CW 0906 Signature Page Endorsement
IA 01 CW 1115 Business Auto Declarations
MC 1632 (6-1971) Form F Uniform Motor Carrier Bodily Injury and Property Damage Liability Endorsement
IL 10 CW 0906 Driver Schedule - No Deductible
CA 00 01 10 13 Business Auto Coverage Form
CA 01 26 10 13 NC Changes
CA 21 16 10 13 NC Uninsured Motorists Coverage
CA 23 01 10 13 Explosives
CA 23 05 10 13 Wrong Delivery of Liquid Products
CA 23 30 10 13 Motor Carrier Endorsement
CA 99 48 10 13 Pollution Liability - Broadened Coverage For Covered Autos - Business Auto and Motor Carrier Coverage Forms
CA 99 54 10 13 Covered Auto Designation Symbol

**FORMS THAT APPLY TO THE COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**FORMS THAT APPLY TO THE COMMERCIAL INLAND MARINE COVERAGE PART**
IL 10 CW 0906 Driver Schedule - No Deductible
IM 129 NC 0817 NC Motor Truck Cargo Coverage Form
IM 06 NC 0414 NC Inland Marine Cargo Policy Conditions
IM 59 CW 1013 Commodity List Endorsement
IM 71 CW 0315 Cap on Losses from Certified Acts of Terrorism
A-101 (10-2013) Commercial Truck Insurance Application 1-15 Units
IL 00 03 09 08 Calculation of Premium
IL 49 CW 0107 Combined Deductible

**IL 03 CW 1115**

POLICY GROUP NUMBER: I-824170001-1



# SCHEDULE OF FORMS AND ENDORSEMENTS

This schedule applies to the following:

COMMERCIAL AUTOMOBILE COVERAGE PART

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COMMERCIAL INLAND MARINE COVERAGE PART

**FORMS THAT APPLY TO THE COMMERCIAL AUTOMOBILE COVERAGE PART**
IA 09 CW 0906 Dump Site Pollution Exclusion
IA 116 CW 0216 Physical Damage Coverage Changes
A-101 (10-2013) Commercial Truck Insurance Application 1-15 Units
IL 00 21 09 08 Nuclear Energy Liability Exclusion Endorsement (Broad Form)
IL 35 CW 1013 Punitive Damages Exclusion
IL 49 CW 0107 Combined Deductible
ID-1 (9-2003) Identification Card
A-101 NC COMMERCIAL SUPP (12-2014) NC Supplemental Application - Commercial
RSA-1 (12-2015) Road Side Assistance Card
MCS-90 (1-2017) - Endorsement for Motor Carrier Policies of Insurance for Public Liability
BMC 91X MC 1614b (12-1998) - Motor Carrier Auto Liability and Property Damage Liability Certificate
Form E - Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate (Physical)

**FORMS THAT APPLY TO THE COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**FORMS THAT APPLY TO THE COMMERCIAL INLAND MARINE COVERAGE PART**

**IL 03 CW 1115**



# CANAL
Greenville, SC

# MOTOR TRUCK CARGO COVERAGE POLICYHOLDER NOTICE
## BILLS OF LADING AND OTHER WRITTEN CONTRACTS

The intent of this notice is to inform you, our Insured, of the importance of proper load/shipping documentation so that your insurance policy that contains this Coverage can best respond to protect you in the event of loss or damage to cargo. The contents of this notice do not change the terms, conditions and limitations of the policy, but are solely for the information of the insured.

The coverage provided under this Policy is for your liability for loss or damage to covered cargo from covered causes, when you are acting as a motor carrier (for hire). Covered cargo means property of others that you have accepted for transportation as a motor carrier **under your tariff and bill of lading or other written contract.**

A bill of lading or other written contract is necessary to define your contractual liability for loss to cargo. The Uniform Straight Bill of Lading (of the National Motor Freight Traffic Association) is the industry standard bill of lading. If you issue another bill of lading form and it closely parallels the information contained in the Uniform Straight Bill of Lading, you may benefit from prior interpretation of those time-tested terms and conditions. You may want to consult with your lawyer about any differences between a bill of lading you use and the Uniform Straight Bill of Lading.

Shippers may offer a bill of lading at pick up of a shipment, the terms of which may favor them and may negatively affect you. It is critical to understand the terms and conditions of the bill of lading or other written contract under which you are hauling goods. These contracts of carriage outline your contractual liability for loss, whether or not the motor truck cargo policy covers such loss. Below are some of the typical issues that are addressed within a standard bill of lading:

- Time limitation/requirement for filing claims against the motor carrier.
- Time limitation/requirement for filing a lawsuit against involved parties.
- Clarification of the carrier's liability for improperly packaged items.
- Possible per pound limitations of high valued goods.
- Protection against delay claims (usually not covered under Motor Truck Cargo policies).
- Clarification of the carrier's liability (negligence vs. strict liability) if the consignee refuses delivery.
- Clarification of the carrier's right to salvage or a salvage offset (agreed reduction in claim amount for total loss).

Usually, other written contracts include similar wording, but there is no standard wording to address liability, limitations, consequential damages, delays and salvage. If you are not using the Uniform Straight Bill of Lading, we recommend that an attorney representing you create your written contracts, as they are important legal documents.

Whether or not there is adequate documentation for a shipment can significantly affect whether and how this coverage form responds to a potential loss situation.

**Coverage described above is summarized and subject to meeting underwriting guidelines and to the terms, conditions and exclusions printed on the Policy.**



**CANAL**
Greenville, SC

COMMERCIAL AUTO COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

# POLICYHOLDER NOTICE REGARDING
# STATE / FEDERAL FILINGS

If your policy contains public liability endorsements, and Canal has filed corresponding certificates with Federal and/or State agency(ies), then please take notice that Canal will cancel said certificate(s) effective the same date as the policy cancellation effective date.

IA 128 CW 0509        **Page 1 of 1**



**CANAL**
Greenville, SC

COMMERCIAL AUTO COVERAGE PART

# IMPORTANT POLICYHOLDER NOTICE
# NORTH CAROLINA

# UNINSURED MOTORIST COVERAGE

NOTICE: YOU ARE REQUIRED TO PURCHASE UNINSURED MOTORIST BODILY INJURY COVERAGE, UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE, AND, IN SOME CASES, UNDERINSURED MOTORIST BODILY INJURY COVERAGE. THIS INSURANCE PROTECTS YOU AND YOUR FAMILY AGAINST INJURIES AND PROPERTY DAMAGE CAUSED BY THE NEGLIGENCE OF OTHER DRIVERS WHO MAY HAVE LIMITED OR ONLY MINIMUM COVERAGE OR EVEN NO LIABILITY INSURANCE. YOU MAY PURCHASE UNINSURED MOTORIST BODILY INJURY COVERAGE, AND IF APPLICABLE, UNDERINSURED MOTORIST COVERAGE WITH LIMITS UP TO ONE MILLION DOLLARS ($1,000,000) PER PERSON AND ONE MILLION DOLLARS ($1,000,000) PER ACCIDENT OR AT SUCH LESSER LIMITS YOU CHOOSE. YOU CANNOT PURCHASE COVERAGE FOR LESS THAN THE MINIMUM LIMITS REQUIRED FOR YOUR OWN VEHICLE. IF YOU DO NOT CHOOSE A GREATER OR LESSER LIMIT FOR UNINSURED MOTORIST BODILY INJURY COVERAGE, A LESSER LIMIT FOR UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE, AND/OR A GREATER OR LESSER LIMIT FOR UNDERINSURED MOTORIST BODILY INJURY COVERAGE, THEN THE LIMITS FOR THE UNINSURED MOTORIST BODILY INJURY COVERAGE AND, IF APPLICABLE, THE UNDERINSURED MOTORIST BODILY INJURY COVERAGE WILL BE THE SAME AS THE HIGHEST LIMITS FOR BODILY INJURY LIABILITY COVERAGE FOR ANY ONE OF YOUR OWN VEHICLES INSURED UNDER THE POLICY AND THE LIMITS FOR THE UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE WILL BE THE SAME AS THE HIGHEST LIMITS FOR PROPERTY DAMAGE LIABILITY COVERAGE FOR ANY ONE OF YOUR OWN VEHICLES INURED UNDER THE POLICY. IF YOU WISH TO PURCHASE UNINSURED MOTORIST AND, IF APPLICABLE, UNDERINSURED MOTORIST COVERAGE AT DIFFERENT LIMITS THAN THE LIMITS FOR YOUR OWN VEHICLE INSURED UNDER THE POLICY, THEN YOU SHOULD CONTACT YOUR INSURANCE COMPANY OR AGENT TO DISCUSS YOUR OPTIONS FOR OBTAINING DIFFERENT COVERAGE LIMITS. YOU SHOULD ALSO READ YOUR ENTIRE POLICY TO UNDERSTAND WHAT IS COVERED UNDER UNINSURED AND UNDERINSURED MOTORIST COVERAGES.

**IA 90 NC 0210**                                                                                                    **Page 1 of 1**



## NORTH CAROLINA NOTICE

IN THE REPAIR OF YOUR COVERED AUTO UNDER THE PHYSICAL DAMAGE COVERAGE PROVISIONS OF THIS POLICY, WE MAY REQUIRE OR SPECIFY THE USE OF AUTOMOBILE PARTS NOT MADE BY THE ORIGINAL MANUFACTURER. THESE PARTS ARE REQUIRED TO BE AT LEAST EQUAL IN TERMS OF FIT, QUALITY, PERFORMANCE AND WARRANTY TO THE ORIGINAL MANUFACTURER PARTS THEY REPLACE.

IA 95 NC 0715

Page 1 of 1



## NOTICE OF ADVERSE ACTION

Thank you for choosing Canal Insurance Company for your insurance needs. To provide you an accurate quote, we verify certain information from consumer reporting agencies as authorized by you. We are required by the Consumer Credit Reform Act of 1996, which became effective September 30, 1997, to inform you of the following:

In quoting your insurance, we based our calculations of premium on a number of factors, including the driving record of any drivers listed on the policy. We may periodically check driving records in order to ensure that we provide you an accurate and competitive insurance premium. We want you to know that the information provided by the consumer reporting agency identified below has affected the premium charged.

If you would like additional information concerning this adverse action, state law requires that you submit a written request within ninety (90) days of the date you received this notice. Please send the request to:

> Canal Insurance Company
> Attn: Legal Department
> PO Box 7
> Greenville, SC 29602

If you ask us to correct, amend or delete any information in our files and in the event we refuse to do so, we will nevertheless include this information in your file. To do this, you need only to send us a brief statement of what you believe to be the correct information.

The consumer reporting agency identified below did not make any decisions regarding the stated insurance policy. Therefore, the consumer reporting agency would not be able to provide you with the specific reasons why we are taking the present action.

You have the right to obtain, within sixty (60) days of the receipt of this notice, a free copy of your consumer report from the following consumer reporting agencies:

> LexisNexis Consumer Center
> P.O. Box 105108
> Atlanta, Georgia 30348-5108
> Telephone: 1-800-456-6004
> www.consumerdisclosure.com

You have the right to dispute inaccurate information in your consumer report by contacting the consumer reporting agency directly. Once you have directly notified the consumer reporting agency of your dispute, the agency must, within a reasonable period of time investigate and record the current status of the disputed information. If after the investigation, such information is found to be inaccurate or unverifiable; such information must be promptly deleted from your records. If the investigation does not resolve the dispute, you may file a brief statement setting forth the nature of the dispute with the consumer reporting agency. Your filed statement will then be included or summarized in any subsequent consumer report containing the information in question.

For complete information regarding the Federal Consumer Credit Protection Law, please refer to The Code of the Laws of the United States of America, Title 15, Chapter 41, Subchapter III, (15 U.S.C. 1681 et seq.)

Should you have any questions, please do not hesitate to call us at 800-277-0124.



**CANAL**
Greenville, SC

# CONSUMER NOTICE CONCERNING CANCELLATION OR NONRENEWAL OF YOUR INSURANCE POLICY

If a Notice of Cancellation has been sent, or is SUBSEQUENTLY SENT, and its effective date is prior to the date of the nonrenewal date of this policy, THEN THE CANCELLATION REMAINS EFFECTIVE, and its terms, conditions, and date of cancellation supersede this Notice of Nonrenewal which is then null and void.

Should you have any questions or comments relating to this important notice, please contact your producer or broker.



**CANAL**
Greenville, SC

This notice modifies insurance provided under the following:

COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

# <u>CLAIMS REPORTING INFORMATION NOTICE</u>

# **800-452-6911**

**Online Claim reporting is also available at www.canal-ins.com**

**To All Canal Insureds:**

Many accidents result in damages which require immediate attention in order to prevent further loss. When a serious bodily injury, a hazardous spill which may impact the environment or damage to perishable cargo has occurred, please call the Canal Claims Reporting number listed above as soon as possible to report the claim.

When reporting a loss, please be prepared to give the following information:

* Insured name, driver and policy number
* Insured Vehicle Information (make, model and VIN)
* Exact location of the occurrence
* Description of the occurrence
* Type of loss and any environment affected
* Other persons or vehicles involved
* A contact number for someone at the scene

Please communicate these procedures to all drivers and claim reporting personnel. We appreciate your business and assistance in providing prompt notice of accidents.

**IL 90 CW 0906**                                                                                          **Page 1 of 1**




# NOTICE TO POLICYHOLDERS

# AVAILABILITY OF LOSS CONTROL SERVICES

Dear Policyholder:

Canal Insurance Company believes that safety is good business and is pleased to offer loss control service to our insureds to help them operate more safely. These loss control services include:

- Safety website: canalinsurance.com/rms
- Local service, knowledgeable field safety representatives
- Onsite safety surveys, follow-up and consultation
- Telephone safety surveys, follow-up and consultation
- Recommended safety practices and action planning
- Large loss surveys, collision trending and crash root cause analyses
- Custom loss control services targeted towards specific client needs
- Customized driver recognition programs
- Regulatory updates (FMCSR, CSA/SMS, State)
- Safety policies, forms and downloads
- Fleet safety plans
- Safety communications, posters, payroll stuffers, online videos and training materials
- Ongoing telephone and/or compliance consultation service
- Video event recorder program*
- Management/Driver safety meetings*
- Vehicle Maintenance File update service*
- Driver Qualification File maintenance*
- MVR service*
- Background investigation*
- Drug and alcohol testing*
- Online safety training*
    – CSA Software*

*Indicates strategic partner fee based service, call for more information

If you would like additional information, please contact your agent, visit canalinsurance.com/rms, email RMSInfo@canal-ins.com, write to PO Box 7, Greenville, SC 29602, or by phone at 800.452.6911.

**IL 92 CW 0615**                                                                                     **Page 1 of 1**



# PRIVACY NOTICE

One of the most important assets of Canal Insurance Company and Canal Indemnity Company (hereinafter collectively referred to as "Canal") is the trust consumers place in us to respect and properly handle personal information received by Canal in connection with providing our products and services. To continue earning your trust and enhance the products and services offered to you, Canal has adopted the following Privacy Policy to govern how we treat your nonpublic information. We recognize the importance of respecting the privacy of our policyholders and want to make sure that you know that all steps necessary will be taken to protect the privacy of the customer information we collect and, in some cases, disclose. This Privacy Policy applies to both current and former customers of Canal. So that you can best understand what happens to the information collected, we encourage you to take a few moments and read the following information about how we collect, disclose, and protect your personal information.

### A. What information do we collect?
Canal, its agencies and other affiliated companies that provide services on behalf of Canal, collect information necessary to underwrite and provide accurate insurance rates and to maintain and improve customer service and claims handling. We obtain nonpublic personal information about you from you in your request for a quotation of rates, on applications for coverage, through your transactions and other interactions with us, as well as from consumer reporting agencies, state motor vehicle departments, and other third parties. We obtain and use this information in accordance with the applicable state and federal laws. The information we gather helps us identify who you are, and properly service your business.

### B. How do we use collected information?
We use the information collected to provide you with accurate rates and to provide customer service. We reserve the right to share any information we collect about you with non-affiliated third parties for purposes other than those specified in this notice. However, prior to sharing any such information, we will provide you with a notice of the types of information and non-affiliated third parties with which we intend to share and give you an opportunity to opt-out of having your information shared.

### C. What information do we disclose?
We will share information about you only as permitted by law. We will not share your Nonpublic Personal Information with other companies for their marketing purposes without your consent. There is no need to "opt out" or tell us not to do this. We may disclose some or all of the information referred to above to affiliates and also to unaffiliated third parties for the purpose of servicing customers' insurance needs, performing business services for us, or as otherwise permitted under applicable state or federal laws. Recipients include our family of insurance companies, claims representatives, service providers, consumer reporting agencies, insurance agents and brokers, law enforcement, courts and government agencies. For example, we retain the services of certain outside contractors to perform services on our behalf. At times we must disclose relevant information about our policyholders to our contractors so they may provide specific services for us such as policy issuance, or inspections and appraisals after a claim. For purposes of fraud prevention, we also participate in several insurance industry supported databases of reported claims and additional driver information. Any personally identifiable medical information will not be shared for purposes other than to properly service the policy you purchase and/or to administer a claim.

### D. What security procedures are used?
Our customers expect us to maintain information that is accurate, protected against manipulation and errors, secure from theft, and free from unwarranted disclosure. We maintain technical and organizational safeguards to protect the confidentiality of nonpublic personal information about our policyholders against (i) unauthorized access or disclosure and (ii) accidental loss, alteration, or destruction. We permit only authorized employees, who are trained in the proper handling of policyholder information, to have access to that information. We strive to ensure that the companies we use as our contractors support our commitment to privacy protection in their handling of personal data about our policyholders. We require outside contractors to keep your information strictly confidential and to use the information solely on our behalf and as directed by us, and we require them to protect this information as we would. We maintain physical, electronic and procedural safeguards that comply with state regulations to guard your nonpublic personal information.

### E. Is the information accurate?
We maintain procedures to assure that the information we collect is accurate, up-to-date, and as complete as possible. To review information we have about you, send a written request to Canal Insurance Company, P. O. Box 7, Greenville, South Carolina 29602, ATTN: Legal Department.

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 21 of 103

To correct information about you, send a written request as described above, explaining your desired correction. Within 30 business days, we will either make the requested correction or tell you why we will not. We cannot correct Consumer Report Information, such as your credit report. To do this, you must contact the consumer reporting agency that provided it.

If we make your requested correction, we will notify you in writing. We will also notify anyone named by you who may have received the information within the previous two years. If required by law, we will also notify others who may have given it to or received it from us. If we refuse to make the requested correction, you may file with us a concise written statement about why you object, including the information you think is correct. Your statement will then become part of your file. It will be sent to the same persons to whom we would send a copy of any correction or change.

NOTE: This Privacy Policy relates only to policyholders who have purchased insurance through Canal. We reserve the right to change this Policy at any time, but rest assured you will be promptly notified of any change as required by law. Additionally, because you purchased your insurance through an agent that agent may have a different policy for disclosing information that you provided to that agent. Please contact the agent directly to receive a copy of their privacy policy. If you have questions about Canal's Privacy Policy, please feel free to contact Canal at 800-699-7690.

IL 99 CW 0812

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

    a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form, Coverage Part or Policy; or

    b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

    (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

    (2) Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

    (3) Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

    a. Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and

    b. Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

**B.** The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**C.** The following exclusion is added:

### EXCLUSION OF TERRORISM

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials; or

5. The total of insured damage to all types of property in the United States, its territories and possessions, Puerto Rico and Canada exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions. Multiple incidents of "terrorism" which occur within a 72-hour period and appear to be carried out in concert or to have a related purpose or common leadership will be deemed to be one incident, for the purpose of determining whether the threshold is exceeded.

With respect to this Item **C.5.,** the immediately preceding paragraph describes the threshold used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply, for the purpose of determining whether this Exclusion will apply to that incident. When the Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Form, Coverage Part or Policy.

**D. Application Of Other Exclusions**

1. When the Exclusion Of Terrorism applies in accordance with the terms of **C.1.** or **C.2.**, such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

2. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Includes copyrighted material of Insurance Services Office, Inc., with its permission          **IM 95 CW 0314**

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| |
|---|
| **SCHEDULE – PART I** |
| **Terrorism Premium (Certified Acts)    $  WAIVED**<br>**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):**<br><br>**COMMERCIAL INLAND MARINE**<br><br>**Additional Information, if any, concerning the terrorism premium:** |
| **SCHEDULE – PART II**<br>Federal share of terrorism losses: 85% Year: 2015<br>Federal share of terrorism losses: 84% Year: 2016<br>Federal share of terrorism losses: 83% Year: 2017<br>Federal share of terrorism losses: 82% Year: 2018<br>Federal share of terrorism losses: 81% Year: 2019<br>Federal share of terrorism losses: 80% Year: 2020<br>(Refer to Paragraph **B.** in this endorsement.) |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part II of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

## C. Cap On Insurer Participation In Payment Of Terrorism Losses

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.



**CANAL**
Greenville, SC

POLICY NUMBER:

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NORTH CAROLINA COMMON POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART

**A. Cancellation**
1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured or your agent any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**
This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**
We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**
1. We have the right to:
   a. Make inspections and surveys at any time;
   b. Give you reports on the conditions we find; and
   c. Recommend changes.
2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:
   a. Are safe or healthful; or
   b. Comply with laws, regulations, codes or standards.
3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.
4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**
The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. the first Named Insured or your agent will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.



**Canal**

POLICY NUMBER: I-824170001-1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SIGNATURE PAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART
GENERAL LIABILITY COVERAGE PART
INLAND MARINE COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 09/25/2017 | Countersigned By: |
|---|---|
| Named Insured: Caroline Trucking Inc | *Sammy Vaughn* (Authorized Representative) |

**In Witness Whereof,** the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the company.

_____
*Secretary*

_____
*President*

IL 27 CW 0906

Page 1 of 1



# BUSINESS AUTO DECLARATIONS

## Canal Insurance Company
STOCK COMPANY
P O BOX 7, GREENVILLE, SC 29602
400 EAST STONE AVENUE, GREENVILLE, SC 29601
(864) 242-5365

**ITEM ONE:** Named Insured and Mailing Address
☐ For additional named insureds see IL 04 CW

Caroline Trucking Inc
565 Mount Zion Church Rd
Stokesdale, NC 27357

Agent of the Insured:

SOUTHERN TRUCK INS SVCS INC - A0011485
PO Box 1368
104 Avon Street
MONROE, NC, 28110

Phone #:

Physical Address (if different)

565 Mount Zion Church Rd
Stokesdale, NC 27357

General Agent:

Risk Placement Services, Inc. dba Edwin M. Rollins
Company - 32036
2115 Rexford Rd Ste 520
Charlotte, NC, 28211

Policy Period:
From 09/25/2017        at 12:01 A.M.        to 09/25/2018
at   12:01 AM    , standard time at your mailing address shown above.

Form of Business:  ☒ Corporation   ☐ Partnership     ☐ Limited Liability Company      ☐ Individual
                   ☐ Trust         ☐ Joint Venture    ☐ Other (specify)

| BUSINESS DESCRIPTION | Trucking For Hire - Non-Exempt |
| --- | --- |

| FORMS APPLICABLE TO THIS COVERAGE PART: | SEE IL 03 CW |
| --- | --- |

PREMIUM

COMMERCIAL AUTOMOBILE COVERAGE PART    $ _____ 8,232.98
$ _____
$ _____
$ _____
$ _____

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH
YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**ITEM TWO**
**SCHEDULE OF COVERAGES AND COVERED AUTOS**
This policy provides only those coverages where a charge is shown in the premium column below. Each of these coverages will apply only to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

| COVERAGES | COVERED AUTOS** | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | PREMIUM |
|---|---|---|---|
| LIABILITY | 7 | $                    1,000,000 CSL | $        6,622.98 |
| PERSONAL INJURY PROTECTION (or equivalent No-fault Coverage) | | SEPARATELY STATED IN EACH P.I.P. ENDORSEMENT MINUS $          DED. | $ |
| ADDED PERSONAL INJURY PROTECTION (or equivalent added No-fault Coverage) | | SEPARATELY STATED IN EACH ADDED P.I.P. ENDORSEMENT. | $ |
| PROPERTY PROTECTION INSURANCE (Michigan only) | | SEPARATELY STATED IN THE P.P.I. ENDORSEMENT MINUS $          DED. FOR EACH ACCIDENT. | $ |
| AUTO MEDICAL PAYMENTS | | $ | $ |
| MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia only) | | SEPARATELY STATED IN EACH MEDICAL EXPENSE AND INCOME LOSS BENEFITS ENDORSEMENT. | $ |
| UNINSURED MOTORISTS | 7 | $                      85,000 CSL | $            29.00 |
| UNDERINSURED MOTORISTS (When not included in Uninsured Motorists Coverage) | 7 | $                      85,000 CSL | $              9.00 |
| PHYSICAL DAMAGE COMPREHENSIVE COVERAGE | 7 | ACTUAL CASH VALUE, COST OF REPAIR OR STATED VALUE WHICHEVER IS LESS, MINUS THE DEDUCTIBLE FOR EACH COVERED LOSS. See ITEM FOUR For Hired Or Borrowed "Autos". See ITEM SEVEN for "trailers" you do not own while attached to a covered "auto". | $           338.00 |
| PHYSICAL DAMAGE SPECIFIED CAUSES OF LOSS COVERAGE | | ACTUAL CASH VALUE, COST OF REPAIR OR STATED VALUE WHICHEVER IS LESS, MINUS THE DEDUCTIBLE FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed "Autos". See ITEM SEVEN for "trailers" you do not own while attached to a covered "auto". | $ |
| PHYSICAL DAMAGE COLLISION COVERAGE | 7 | ACTUAL CASH VALUE, COST OF REPAIR OR STATED VALUE WHICHEVER IS LESS, MINUS THE DEDUCTIBLE FOR EACH COVERED AUTO. See ITEM FOUR For Hired Or Borrowed "Autos". See ITEM SEVEN for "trailers" you do not own while attached to a covered "auto". | $         1,234.00 |
| TRAILER INTERCHANGE FOR ☐ COMPREHENSIVE or ☐ SPECIFIED CAUSES OF LOSS and ☐ COLLISION | | ACTUAL CASH VALUE, COST OF REPAIR OR $          WHICHEVER IS LESS, MINUS $1,000 DED. FOR EACH COVERED "TRAILER". | $ |
| | | PREMIUM FOR ENDORSEMENTS | $ |
| | | *ESTIMATED TOTAL PREMIUM | $        8,232.98 |

*This policy may be subject to final audit. ** Entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form shows which autos are covered autos

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 32 of 103

**ITEM THREE**

**SCHEDULE OF COVERED AUTOS**

| | | DESCRIPTION | | | TERRITORY |
|---|---|---|---|---|---|
| Covered Auto No. | Class Code | Year, Model, Trade Name, Body Type Serial Number (S) Vehicle Identification Number (VIN) | | | Town & State Where The Covered Auto Will Be Principally Garaged |
| 1 | | 2008 Cascadia 125 Freightliner 1FUJGLCK58LAA7204 | | | Stokesdale, North Carolina |

| | | CLASSIFICATION | | | |
|---|---|---|---|---|---|
| Covered Auto No. | Radius Of Operation | Business Class | Vehicle Type | Description of Cargo | EXCEPT For Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below As Interests May Appear At The Time Of The Loss. |
| 1 | Unlimited | Trucking For Hire - Non-Exempt | Tractor | Auto Parts and Accessories | |

**COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.)**

| | LIABILITY | | PERSONAL INJURY PROTECTION | | ADDED P.I.P. | PROPERTY PROTECTION (Michigan Only) | |
|---|---|---|---|---|---|---|---|
| Covered Auto No. | Limit | Premium | Limit Stated In Each P.I.P. End. Minus Deductible Shown Below | Premium | Limit Stated In Each Added P.I.P. End. Premium | Limit Stated In P.P.I. End. Minus Deductible Shown Below | Premium |
| 1 | 1,000,000 CSL | 6,622.98 | | | | | |
| Total Premium | | $        6,622.98 | | $ | $ | | $ |

**ITEM THREE**

**SCHEDULE OF COVERED AUTOS (Cont'd)**

| Covered Auto No. | COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | |
|---|---|---|---|---|
| | **AUTO MEDICAL PAYMENTS** | | **MEDICAL EXPENSE AND INCOME LOSS BENEFITS (Virginia Only)** | |
| | Limit | Premium | Limit Stated In Each Medical Expense And Income Loss Endorsement For Each Person | Premium |
| | | | | |
| **Total Premium** | | $ | | $ |

| Covered Auto No. | COVERAGES – PREMIUMS, LIMITS AND DEDUCTIBLES (Absence of a deductible or limit entry in any column below means that the limit or deductible entry in the corresponding ITEM TWO column applies instead.) | | | | |
|---|---|---|---|---|---|
| | ☐ OCN  ☒ Stated Value | ☒ COMPREHENSIVE ☐ SPECIFIED CAUSES OF LOSS | | **COLLISION** | |
| | | Deductible | Premium | Deductible | Premium |
| 1 | 30,000.00 | 1,000 | 338.00 | 1,000 | 1,234.00 |
| **Total Premium** | | | $         338.00 | | $      1,234.00 |

**Note**

The amount shown in the Schedule or in the Declarations is not necessarily the amount you will receive at the time of "loss" for the described property. Please refer to the Limit Of Insurance and Deductible Provision stated in the Business Auto Coverage Form.

POLICY NUMBER:  I-824170001-1

**ITEM FOUR**

**SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUMS**

| Covered Autos Liability Coverage – Cost Of Hire Rating Basis For Auto Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | ESTIMATED ANNUAL COST OF HIRE | RATE PER $100 COST OF HIRE | PREMIUM |
| PRIMARY COVERAGE | $ | $ | $ |
| EXCESS COVERAGE | $ | $ | $ |
| | | TOTAL HIRED AUTO PREMIUM: | $ |

For "autos" used in your motor carrier operations, cost of hire means:
1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers) and, if not included therein,
2. The total remunerations of all operators and drivers' helpers, of hired automobiles, whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and
3. The total dollar amount of any other costs (e.g., repair, maintenance, fuel, etc.) directly associated with operating the hired automobiles, whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

| Covered Autos Liability Coverage – Cost Of Hire Rating Basis For Auto NOT Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | | |
|---|---|---|---|
| COVERED AUTOS LIABILITY COVERAGE | ESTIMATED ANNUAL COST OF HIRE | RATE PER $100 COST OF HIRE | PREMIUM |
| PRIMARY COVERAGE | $ | $ | $ |
| EXCESS COVERAGE | $ | $ | $ |
| | | TOTAL HIRED AUTO PREMIUM: | $ |

For "autos" **NOT** used in your motor carrier operations, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

| Physical Damage Coverages – Cost Of Hire Rating Basis For All Autos (Other Than Mobile Or Farm Equipment) | | | | |
|---|---|---|---|---|
| COVERAGE | LIMIT OF INSURANCE | ESTIMATED ANNUAL COST OF HIRE (EXCLUDING AUTOS HIRED WITH A DRIVER) | RATE PER $100 COST OF HIRE | PREMIUM |
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIR, OR $_____ WHICHEVER IS LESS, MINUS $_____ FOR EACH COVERED AUTO. | $ | $ | $ |
| SPECIFIED CAUSES OF LOSS | | $ | $ | $ |
| COLLISION | | $ | $ | $ |
| | | | TOTAL HIRED AUTO PREMIUM | $ |

For Physical Damage Coverages, cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for any "auto" that is leased, hired, rented or borrowed with a driver.

**ITEM FIVE**

**SCHEDULE FOR NON-OWNERSHIP LIABILITY**

| RATING BASIS | NUMBER | PREMIUM |
|---|---|---|
| Number Of Employees | | $ |
| Number Of Partners | | $ |
| | TOTAL PREMIUM | $ |

**ITEM SIX**

**TRAILER INTERCHANGE COVERAGE**

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED EXPOSED VALUE* | RATE - % OF EXPOSED VALUE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIR OR $_____ WHICHEVER IS LESS, MINUS $1,000 DED. FOR EACH COVERED "TRAILER". | $ | | $ |
| SPECIFIED CAUSES OF LOSS | | $ | | $ |
| COLLISION | | $ | | $ |
| | | | TOTAL PREMIUM | $ |

*Estimated exposed value is the stated limit times the number of tractors insured for liability coverage on the policy.

**ITEM SEVEN**

**TRAILERS YOU DO NOT OWN WHILE ATTACHED TO A COVERED AUTO**

| COVERAGES | LIMIT OF INSURANCE THE MOST WE WILL PAY DEDUCTIBLE | ESTIMATED EXPOSED VALUE* | RATE - % OF EXPOSED VALUE | PREMIUM |
|---|---|---|---|---|
| COMPREHENSIVE | ACTUAL CASH VALUE, COST OF REPAIR OR $_____ WHICHEVER IS LESS, MINUS $1,000 DEDUCTIBLE FOR EACH COVERED "TRAILER". | $ | | $ |
| SPECIFIED CAUSES OF LOSS | | $ | | $ |
| COLLISION | | $ | | $ |
| | | | TOTAL PREMIUM | $ |

*Estimated exposed value is the stated limit times the number of tractors insured for liability coverage on the policy.

# FORM F

## UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY INSURANCE ENDORSEMENT

It is agreed that:

1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commissions indicated below hereof.

3. This endorsement may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

Attached to and forming part of Policy No. _____ 824170001 _____

issued by _____ Canal Insurance Company _____ , herein called

Company, of _____ P.O. Box 7, Greenville, SC 29602 _____

to _____ Caroline Trucking Inc _____

of _____ 565 Mount Zion Church Rd, Stokesdale, NC 27357 _____

Dated at _____ 14:26 _____ this ___ 25 ___ day of _____ September _____ 20 __ 17 __

Countersigned by _____ [signature] _____

Authorized Representative

| X - - INDICATES STATE COMMISSIONS WITH WHOM UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE HAS BEEN FILED. | | | | | | | |
|---|---|---|---|---|---|---|---|
| ALABAMA | | HAWAII | | MICHIGAN | | NORTH CAROLINA | X | UTAH | |
| ALASKA | | IDAHO | | MINNESOTA | | NORTH DAKOTA | | VERMONT | |
| ARIZONA | | ILLINOIS | | MISSISSIPPI | | OHIO | | VIRGINIA | |
| ARKANSAS | | INDIANA | | MISSOURI | | OKLAHOMA | | WASHINGTON | |
| CALIFORNIA | | IOWA | | MONTANA | | OREGON | | WEST VIRGINIA | |
| COLORADO | | KANSAS | | NEBRASKA | | PENNSYLVANIA | | WISCONSIN | |
| CONNECTICUT | | KENTUCKY | | NEVADA | | RHODE ISLAND | | WYOMING | |
| DELAWARE | | LOUISIANA | | NEW HAMPSHIRE | | SOUTH CAROLINA | | | |
| DISTRICT OF COLUMBIA | | MAINE | | NEW JERSEY | | SOUTH DAKOTA | | | |
| FLORIDA | | MARYLAND | | NEW MEXICO | | TENNESSEE | | | |
| GEORGIA | | MASSACHUSETTS | | NEW YORK | | TEXAS | | | |

MC1632 (Ed. 6-71)

1RB 3538 A



# MOTOR TRUCK CARGO DECLARATIONS

## Canal Insurance Company
STOCK COMPANY
P O BOX 7, GREENVILLE, SC 29602
400 EAST STONE AVENUE, GREENVILLE, SC 29601
(864) 242-5365

**ITEM ONE:** Named Insured and Mailing Address
☐ For additional named insureds see IL 04 CW

Caroline Trucking Inc
565 Mount Zion Church Rd
Stokesdale, NC 27357

Agent of the Insured:

SOUTHERN TRUCK INS SVCS INC - A0011485
PO Box 1368
104 Avon Street
MONROE, NC, 28110
**Phone #:**

Physical Address (if different)

565 Mount Zion Church Rd
Stokesdale, NC 27357

Policy Period:
From 09/25/2017      at 12:01 A.M.      to 09/25/2018
at    12:01 AM   , standard time at your mailing address shown above.

General Agent:

Risk Placement Services, Inc. dba Edwin M. Rollins
Company - 32036
2115 Rexford Rd  Ste 520
Charlotte, NC, 28211

Form of Business:   ☒ Corporation   ☐ Partnership   ☐ Limited Liability Company   ☐ Individual
☐ Trust   ☐ Joint Venture   ☐ Other (specify)

| BUSINESS DESCRIPTION | Trucking For Hire - Non-Exempt |
|---|---|

| FORMS APPLICABLE TO THIS COVERAGE PART: | SEE IL 03 CW |
|---|---|

| | PREMIUM |
|---|---|
| MOTOR TRUCK CARGO COVERAGE PART  $ | 1,124.00 |
| $ | |
| $ | |
| $ | |
| $ | |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH
YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 38 of 103

**ITEM TWO**
**DESCRIPTION OF SCHEDULED VEHICLES**

| Covered Auto No. | Year, Model, Trade Name, Body Type Serial Number (S) Vehicle Identification Number (VIN) | Cargo Limit of Liability | Deductible | Premium |
|---|---|---|---|---|
| 1 | 2008 Cascadia 125 Freightliner 1FUJGLCK58LAA7204 | 100,000 | 1,000.00 | 1,124.00 |
| | | | | |
| | | **SCHEDULED VEHICLES: ESTIMATED PREMIUM** | **$** | 1,124.00 |

For additional vehicles see attached schedule

**ITEM THREE**
**REFRIGERATION BREAKDOWN**

| | Deductible |
|---|---|
| | $ |

**ITEM FOUR**
**EXTENSIONS OF COVERAGE**

| | Limit |
|---|---|
| Debris Removal | $ 25,000 |
| Reusable Packing Container | $ 5,000 |
| Freight Charges | $ 1,000 |
| Loss Mitigation Expense | $ 7,500 |
| **EXTENSIONS OF COVERAGE: ESTIMATED PREMIUM** | **$** Included |

**ITEM FIVE**

| Catastrophe Limit | $ 100,000 |
|---|---|

**ITEM SIX**

| **\*ESTIMATED TOTAL PREMIUM** | **$** 1,124.00 |
|---|---|

*This policy may be subject to final audit.

**IM 01 CW 1115**



# CANAL

Greenville, SC

POLICY NUMBER: I-824170001-1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DRIVER SCHEDULE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

CARGO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 09/25/2017 | Countersigned By: |
|---|---|
| Named Insured: Caroline Trucking Inc | *Tammy Vaughn* |
| | (Authorized Representative) |

The following individuals are drivers of "autos" under this policy. Any driver of an "auto" during the policy period should be reported to us immediately and added to the list of drivers before operating an "auto" covered under this policy.

| # | Driver Name | Date Reported | License Number | State Licensed |
|---|---|---|---|---|
| 1 | ANDREW DAVIS | 09/25/2017 | 5066547 | NC |

**IL 10 CW 0906**

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

### A. Description Of Covered Auto Designation Symbols

| Symbol | Description Of Covered Auto Designation Symbols | |
|:---:|---|---|
| 1 | Any "Auto" | |
| 2 | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| 3 | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| 4 | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| 5 | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| 6 | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| 7 | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| 8 | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 9 | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2011

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|---|---|---|

## B. Owned Autos You Acquire After The Policy Begins

1. If Symbols **1**, **2**, **3**, **4**, **5**, **6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

    a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

    b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

    a. Breakdown;

    b. Repair;

    c. Servicing;

    d. "Loss"; or

    e. Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

    The following are "insureds":

    a. You for any covered "auto".

    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

        (1) The owner or anyone else from whom you hire or borrow a covered "auto".

        This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 42 of 103

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

## 2. Coverage Extensions

### a. Supplementary Payments

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

### b. Out-of-state Coverage Extensions

While a covered "auto" is away from the state where it is licensed, we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

## B. Exclusions

This insurance does not apply to any of the following:

### 1. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

### 2. Contractual

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

### 3. Workers' Compensation

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 43 of 103

## 4. Employee Indemnification And Employer's Liability

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph a. above.

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

## 5. Fellow Employee

"Bodily injury" to:

a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph a. above.

## 6. Care, Custody Or Control

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

## 7. Handling Of Property

"Bodily injury" or "property damage" resulting from the handling of property:

a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

## 8. Movement Of Property By Mechanical Device

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

## 9. Operations

"Bodily injury" or "property damage" arising out of the operation of:

a. Any equipment listed in Paragraphs 6.b. and 6.c. of the definition of "mobile equipment"; or

b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

## 10. Completed Operations

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph a. or b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed;

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

    (1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

    (2) Otherwise in the course of transit by or on behalf of the "insured"; or

    (3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

    (1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

    (2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

    (a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

    (b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

© Insurance Services Office, Inc., 2011

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

    **a. Comprehensive Coverage**

    From any cause except:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

    **b. Specified Causes Of Loss Coverage**

    Caused by:

    (1) Fire, lightning or explosion;

    (2) Theft;

    (3) Windstorm, hail or earthquake;

    (4) Flood;

    (5) Mischief or vandalism; or

    (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

    **c. Collision Coverage**

    Caused by:

    (1) The covered "auto's" collision with another object; or

    (2) The covered "auto's" overturn.

2. **Towing**

    We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

    If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

    a. Glass breakage;

    b. "Loss" caused by hitting a bird or animal; and

    c. "Loss" caused by falling objects or missiles.

    However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

    **a. Transportation Expenses**

    We will pay up to $20 per day, to a maximum of $600, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

    **b. Loss Of Use Expenses**

    For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

    (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

    (2) Specified Causes Of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

© Insurance Services Office, Inc., 2011
**CA 00 01 10 13**

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 46 of 103

**(3)** Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   **(1)** The explosion of any weapon employing atomic fission or fusion; or

   **(2)** Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   **(1)** War, including undeclared or civil war;

   **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **(3)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

   **a.** "Loss" to any one covered "auto" is the lesser of:

   **(1)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   **(2)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

   **b.** All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   **(1)** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 47 of 103

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

**SECTION IV – BUSINESS AUTO CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

© Insurance Services Office, Inc., 2011

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 48 of 103

### 4. Loss Payment – Physical Damage Coverages

At our option, we may:

a. Pay for, repair or replace damaged or stolen property;

b. Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

c. Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

### 5. Transfer Of Rights Of Recovery Against Others To Us

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

## B. General Conditions

### 1. Bankruptcy

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

### 2. Concealment, Misrepresentation Or Fraud

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

a. This Coverage Form;

b. The covered "auto";

c. Your interest in the covered "auto"; or

d. A claim under this Coverage Form.

### 3. Liberalization

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

### 4. No Benefit To Bailee – Physical Damage Coverages

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

### 5. Other Insurance

a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own; or

(2) Primary while it is connected to a covered "auto" you own.

b. For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

c. Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

d. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

### 6. Premium Audit

a. The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

Case 1:18-cv-00100-WO-JEP  Document 3  Filed 02/14/18  Page 49 of 103

### 7. Policy Period, Coverage Territory

Under this Coverage Form, we cover "accidents" and "losses" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

(1) The United States of America;

(2) The territories and possessions of the United States of America;

(3) Puerto Rico;

(4) Canada; and

(5) Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

### 8. Two Or More Coverage Forms Or Policies Issued By Us

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

## SECTION V – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means:

1. A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

2. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 50 of 103

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

  (1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

  (2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

  (a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

  (b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

  1. A lease of premises;

  2. A sidetrack agreement;

  3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

  4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

  5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

  6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

  a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

  b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

  c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  2. Vehicles maintained for use solely on or next to premises you own or rent;

  3. Vehicles that travel on crawler treads;

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 51 of 103

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. Power cranes, shovels, loaders, diggers or drills; or

   b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

   b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   a. Equipment designed primarily for:

      (1) Snow removal;

      (2) Road maintenance, but not construction or resurfacing; or

      (3) Street cleaning;

   b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

   1. Damages because of "bodily injury" or "property damage"; or

   2. A "covered pollution cost or expense";

   to which this insurance applies, are alleged.

   "Suit" includes:

      a. An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

      b. Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P. "Trailer" includes semitrailer.

© Insurance Services Office, Inc., 2011

CA 00 01 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA CHANGES

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, North Carolina, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

## A. Changes In Covered Autos Liability Coverage

1. The Covered Autos Liability Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina law as follows:

   a. $30,000 for "bodily injury" to any one person caused by any one "accident";

   b. $60,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $25,000 for "property damage" caused by any one "accident".

   This provision will not change the Limit of Insurance.

2. If the policy provides Covered Autos Liability Coverage only for owned "autos", a temporary substitute for one of these will also be considered a covered "auto", subject to the following provisions:

   a. The owned "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

   b. The temporary substitute must be owned by someone other than you or a member of your household.

   c. The temporary substitute must be with the permission of the owner.

   d. The Covered Autos Liability Coverage for the temporary substitute is excess over any other collectible insurance.

## B. Changes In Physical Damage Coverage

Paragraph **A.3. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles** in the Business Auto and Motor Carrier Coverage Forms and Paragraph **F.1.b. Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles** in the Auto Dealers Coverage Form are replaced by the following:

**Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   a. Glass breakage;

   b. "Loss" caused by hitting a bird or animal; and

   c. "Loss" caused by falling objects or missiles.

However, you have the option of having glass breakage caused by the covered "auto's" collision or overturn and "loss" caused by hitting a bird or animal considered a "loss" under Collision Coverage.

## C. Changes In Uninsured Motorists Coverage

The Limit of Insurance applies except that we will apply the limit shown in the Declarations to first provide the separate limits required by North Carolina law as follows:

1. $30,000 for "bodily injury" to any one person caused by any one "accident";

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 53 of 103

**2.** $60,000 for "bodily injury" to two or more persons caused by any one "accident"; and

**3.** $25,000 for "property damage" caused by any one "accident".

This provision will not change the total Limit of Insurance.

**D. Changes In Auto Medical Payments Coverage**

If the Auto Medical Payments Coverage endorsement is attached, then Exclusion **C.5.** relating to "bodily injury" to an "insured" while working in a business of selling, servicing, repairing or parking "autos", applies only if workers' compensation benefits are available.

**E. Changes In Garagekeepers Coverage**

If the policy provides Garagekeepers Coverage, any deductible will apply only to the amount of "loss" and will not reduce the Limit of Insurance.

**F. Changes In Conditions**

**1.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel any type or limit of coverage provided by this policy to the extent that it cannot be ceded to the North Carolina Reinsurance Facility as follows:

**a.** If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b.** If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

**(1)** Expiration of the policy term; or

**(2)** Anniversary date;

stated in the policy only for one or more of the following reasons:

**(a)** Nonpayment of premium. Cancellation for nonpayment of premium is not effective if the amount due is paid before the effective date set forth in the notice of cancellation.

**(b)** An act or omission by the "insured" or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy, or presenting a claim under this policy.

**(c)** Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk.

**(d)** Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk.

**(e)** A fraudulent act against us by the "insured" or his or her representative that materially affects the insurability of the risk.

**(f)** Willful failure by the "insured" or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us.

**(g)** Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30.

**(h)** Conviction of the "insured" of a crime arising out of acts that materially affect the insurability of the risk.

**(i)** A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina.

**(j)** You fail to meet the requirements contained in our corporate charter, articles of incorporation, or bylaws, when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

© Insurance Services Office, Inc., 2012

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 54 of 103

We may cancel any type or limit of coverage provided by the policy to the extent that it can be ceded to the North Carolina Reinsurance Facility only for one or more of the following reasons by mailing to the first Named Insured at least 15 days' notice at the last address known to us:

(1) Nonpayment of premium.

(2) You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance Facility.

(3) Our contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's "insureds".

(4) This policy is cancelled pursuant to a power of attorney given a company licensed according to the provisions of G.S. 58-56.

2. To the extent that any type or limit of coverage provided by this policy cannot be ceded to the North Carolina Reinsurance Facility, the following provision is added and supersedes any other provisions to the contrary:

**Nonrenewal**

a. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

(1) Expiration of the policy if it has been written for one year or less; or

(2) Anniversary date if it is a continuous policy or has been written for more than one year or for an indefinite term.

b. We need not mail or deliver the notice of nonrenewal if you have:

(1) Insured property covered under this policy under any other insurance policy;

(2) Accepted replacement coverage; or

(3) Requested or agreed to nonrenewal of this policy.

c. If notice is mailed, proof of mailing will be sufficient proof of notice.

d. The written notice of cancellation or nonrenewal will:

(1) Be mailed or delivered to the first Named Insured and any designated loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

(2) State the reason or reasons for cancellation or nonrenewal.

3. To the extent that any type or limit of coverage provided by this policy can be ceded to the North Carolina Reinsurance Facility, the following provision is added and supersedes any other provision to the contrary:

**Nonrenewal**

We may nonrenew this policy only for one or more of the following reasons:

a. Nonpayment of premium.

b. You become a nonresident of North Carolina and are not otherwise entitled to insurance through the Reinsurance facility.

c. Our contract with the agent through whom this policy is written is terminated for reasons other than the quality of the agent's "insureds".

d. This policy is cancelled pursuant to a power of attorney given a company licensed according to the provisions of G.S. 58-56.

e. You fail to meet the requirements contained in our corporate charter, articles of incorporation, or bylaws, when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

4. Common Policy Condition **B. Changes** is changed to read as follows:

This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium for that change as of the effective date of change. If we revise this policy form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

5. Loss Condition **1. Appraisal For Physical Damage Loss** is replaced by the following:

   **1. Appraisal For Physical Damage Loss**

   If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision, in writing, agreed to by any two will be binding. Each party will:

   **a.** Pay its chosen appraiser; and

   **b.** Bear the other expenses of the appraisal and umpire equally.

   If we submit to an appraisal, we will still retain our right to deny the claim.

6. The following is added to **Loss Conditions:**

   **Appraisal For Property Damage**

   In the event of an "accident":

   **1.** If the claimant and we fail to agree as to the difference in fair market value of the motor vehicle immediately before and immediately after the "accident" and the difference in the claimant's and our estimate of the diminution in fair market value of the vehicle is greater than $2,000 or 25% of the fair market retail value of the vehicle prior to the "accident" as determined by the latest edition of the National Automobile Dealers Association Pricing Guide Book or other publications approved by the Commissioner of Insurance, whichever is less; and

   **2.** Liability for coverage for the claim is not in dispute;

   then on the written demand of either the claimant or us, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days after the demand.

Should the appraisers fail to agree, they shall then select a competent and disinterested appraiser to serve as an umpire. If the appraisers cannot agree upon an umpire within 15 days, either the claimant or we may request that a magistrate resident in the county where the insured motor vehicle is registered or the county where the "accident" occurred select the umpire.

The umpire then shall prepare a report determining the amount of "property damage" and shall file the report with us and the claimant.

The claimant or we shall have 15 days from the filing of the report to reject the report and notify the other party of such rejection. If the report is not rejected within 15 days from the filing of the report, the report shall be binding upon both the claimant and us.

Each appraiser shall be paid by the party selecting the appraiser, and the expenses of appraisal and umpire shall be paid by the parties equally.

If either party elects to have an appraisal to determine the amount of "property damage", then the amount of "property damage" cannot be decided through arbitration.

7. Paragraph **2.** of the **Concealment, Misrepresentation Or Fraud General Conditions** is amended by the addition of the following:

   This condition does not apply for coverage up to the minimum limits of liability required by the North Carolina Financial Responsibility Act of 1957.

© Insurance Services Office, Inc., 2012

**CA 01 26 10 13**

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 56 of 103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or garaged in, or "auto dealer operations" conducted in, North Carolina, this endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** Caroline Trucking Inc |
| **Endorsement Effective Date:** 09/25/2017 |

**SCHEDULE**

| |
|---|
| **Limit Of Insurance: $**        85,000   **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

| |
|---|
| The definition of "uninsured motor vehicle" in this endorsement applies in its entirety unless an "X" is entered below: |
| ☐ If an "X" is entered in this box, Paragraph **b.** of the definition of "uninsured motor vehicle" does not apply. |

## A. Coverage

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of:

   a. An "uninsured motor vehicle" because of "bodily injury" sustained by the "insured" and caused by an "accident"; and

   b. An "uninsured motor vehicle", as defined in Paragraphs **a.** and **c.** of the definition of "uninsured motor vehicle", because of "property damage" caused by an "accident".

   The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. With respect to damages resulting from an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle", we will pay under this coverage only if Paragraph **a.** or **b.** below applies:

   a. The limits of any applicable liability bonds or policies have been exhausted by payment of judgments or settlements; or

   b. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" and we:

      (1) Have been given prompt written notice of such tentative settlement; and

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 57 of 103

**(2)** Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

**3.** Any judgment for damages arising out of a "suit" brought without sending us a copy of the summons, complaint or other process against an uninsured motorist is not binding on us.

## B. Who Is An Insured

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members".

   **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   **b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

   **c.** The Named Insured for "property damage" only.

## C. Exclusions

This coverage does not apply to:

**1.** Any claim settled by the "insured" or any legal representative of the "insured" without our consent. However, this exclusion does not apply to a settlement made with the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" in accordance with the procedure described in Paragraph **A.2.b.**

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** The direct or indirect benefit of any insurer of property.

**4.** An "auto" or property contained in the "auto" other than a covered "auto".

**5.** The first $100 of the amount of "property damage" to the property of each "insured" as the result of any one "accident".

**6.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**7.** Punitive or exemplary damages.

**8.** "Bodily injury" or "property damage" arising directly or indirectly out of:

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Uninsured Motorists Coverage shown in the Declarations.

**2.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form or Medical Payments Coverage endorsement attached to this Coverage Part.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law exclusive of nonoccupational disability benefits.

© Insurance Services Office, Inc., 2012

**CA 21 16 10 13**

## E. Changes In Conditions

The Conditions are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   **a.** The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   **b.** Any insurance we provide with respect to a vehicle:

   **(1)** The Named Insured does not own; or

   **(2)** Owned by the Named Insured or, if the Named Insured is an individual, any "family member", that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

   **c.** If the coverage under this Coverage Form is provided:

   **(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

   **(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   **a.** Promptly notify the police if a hit-and-run driver is involved.

   **b.** Promptly send us copies of the legal papers if a "suit" is brought. A "suit" may not be brought against anyone legally responsible for the use of any "auto" involved in the "accident" until 60 days after an "insured" notifies us or our agent of his or her belief that the prospective defendant is an uninsured motorist.

   **c.** Any person who intends to pursue recovery against the owner or operator of an "uninsured motor vehicle", as described in Paragraph **b.** of the definition of "uninsured motor vehicle", for damages beyond those paid or payable under this policy shall give us:

   **(1)** Notice of such intent; and

   **(2)** The opportunity to participate, at our expense, in the prosecution of such claim.

   **d.** A person seeking coverage from an insurer, owner or operator of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer and allow us to advance payment to that "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification to preserve our rights against the insurer, owner or operator of such vehicle.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed as follows:

   **a.** If we make any payment on the Named Insured's behalf, we are entitled to recover what we paid from other parties. The Named Insured must transfer rights of recovery against others to us. The Named Insured must do everything necessary to secure these rights and do nothing to jeopardize them.

However, our rights under this paragraph do not apply with respect to vehicles described in Paragraphs **F.4.a.**, **c.** and **d.** of the definition of "uninsured motor vehicle". For these vehicles, if we make any payment and the Named Insured recovers from another party, that Named Insured must hold the proceeds in trust for us and pay us back the amounts we have paid.

**b.** Our rights do not apply under this provision with respect to damages caused by an "accident" with a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle" if we:

(1) Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of a vehicle described in Paragraph **b.** of the definition of "uninsured motor vehicle"; and

(2) Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

(1) That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motor Vehicle Coverage; and

(2) We also have a right to recover the advanced payment.

4. The following condition is added:

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. The "insured" may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**c.** If the "insured" elects not to arbitrate, our liability will be determined only in an action against us. In any action against us, except an action to determine whether a vehicle is an "uninsured motor vehicle", we may require the "insured" to join the owner or driver of the vehicle as a party defendant.

If the "insured" elects arbitration to determine the amount of "property damage", then the Appraisal For Property Damage Condition does not apply.

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Property damage" means injury to or destruction of the property of an "insured".

4. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

**a.** For which neither a bond or policy nor cash or securities on file with the North Carolina Commissioner of Motor Vehicles provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act.

**b.** That is an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or "trailer" for which the sum of all bodily injury liability bonds or policies at the time of an "accident" provides at least the amounts required by the North Carolina Motor Vehicle Safety and Responsibility Act, but their limits are either:

(1) Less than the limits of underinsured motorists coverage applicable to a covered "auto" that the Named Insured owns involved in the "accident";

(2) Less than the limits of this coverage, if a covered "auto" that the Named Insured owns is not involved in the "accident"; or

© Insurance Services Office, Inc., 2012

**CA 21 16 10 13**

**(3)** Reduced by payments to others injured in the "accident" to an amount which is less than the Limit of Insurance for this coverage.

However, an underinsured motor vehicle does not include a "covered auto" unless the limit of Uninsured Motorists Coverage shown in the Declarations or Schedule is greater than the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations of this policy.

**c.** For which the insuring or bonding company denies coverage or is or becomes insolvent.

**d.** That is a hit-and-run vehicle causing "bodily injury" to an "insured" and neither the driver nor owner can be identified. The vehicle must hit an "insured", a covered "auto" or a vehicle an "insured" is "occupying".

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law.

**b.** Owned by:
   **(1)** The United States of America;
   **(2)** Canada;
   **(3)** A state; or
   **(4)** An agency, except vehicles owned by political subdivisions of **(1)**, **(2)** or **(3)** above.

**c.** Designed for use mainly off public roads while not on public roads.

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 61 of 103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXPLOSIVES

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Covered Autos Liability Coverage** is changed by adding the following exclusion:

This insurance does not apply to:

"Bodily injury" or "property damage" caused by the explosion of explosives you make, sell or transport.

© Insurance Services Office, Inc., 2011

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WRONG DELIVERY OF LIQUID PRODUCTS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**Covered Autos Liability Coverage** is changed by adding the following exclusion:

This insurance does not apply to:

"Bodily injury" or "property damage" resulting from the delivery of any liquid into the wrong receptacle or to the wrong address, or from the delivery of one liquid for another, if the "bodily injury" or "property damage" occurs after delivery has been completed.

Delivery is considered completed even if further service or maintenance work, or correction, repair or replacement is required because of wrong delivery.

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 63 of 103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOTOR CARRIER ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

---

**Named Insured:** Caroline Trucking Inc

**Endorsement Effective Date:** 09/25/2017

---

### SCHEDULE

For those covered "autos" used in your motor carrier operations as a "motor carrier", the liability cost of hire provisions in the Declarations are replaced by the following:

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums – Covered Autos Liability Coverage**

| Covered Autos Liability Coverage – Cost Of Hire Rating Basis For Autos Used In Your Motor Carrier Operations (Other Than Mobile Or Farm Equipment) | | |
|---|---|---|
| **Covered Autos Liability Coverage** | **Estimated Annual Cost Of Hire For All States** | **Premium** |
| **Primary Coverage** | $ See Item 4 of Business Auto Declarations if Applicable | $ |
| **Excess Coverage** | $ See Item 4 of Business Auto Declarations if Applicable | $ |
| | **Total Hired Auto Premium** | $ |

For "autos" used in your motor carrier operations, cost of hire means:

1. The total dollar amount of costs you incurred for the hire of automobiles (includes "trailers" and semitrailers) and, if not included therein,

2. The total remunerations of all operators and drivers' helpers, of hired automobiles whether hired with a driver by lessor or an "employee" of the lessee, or any other third party, and

3. The total dollar amount of any other costs (e.g., repair, maintenance, fuel) directly associated with operating the hired automobiles whether such costs are absorbed by the "insured", paid to the lessor or owner, or paid to others.

© Insurance Services Office, Inc., 2011

The following provisions apply to those covered "autos" used in your operations as a "motor carrier" if gross receipts is used as a premium basis:

| Schedule For Gross Receipts Or Mileage Rating Basis | | |
|---|---|---|
| **Rating Basis (Check one):** | ☐ **Gross Receipts (Per $100)** | ☐ **Mileage (Per Mile)** |
| **Estimated Yearly (Gross Receipts Or Mileage):** | | |
| | **Premiums** | |
| **Covered Autos Liability Coverage** | $ See IA 154G if Applicable | |
| **Auto Medical Payments** | $ | |
| **Total Premiums** | $ | |
| **Minimum Premiums** | $ | |

Gross receipts means the total amount earned by the named insured for shipping or transporting property regardless of whether you or any other carrier originates the shipment or transportation. Gross receipts includes the total amount received from renting equipment, with or without drivers, to any person or organization not engaged in the business of transporting property for hire by "auto" and 15% of the total amount received from renting any equipment, with or without drivers, to any person or organization engaged in the business of transporting property for hire by "auto". Gross receipts does not include:

1. Amounts you paid to air, sea or land carriers operating under their own permits.

2. Advertising revenue.

3. Taxes collected as a separate item and paid directly to the government.

4. C.O.D. collections for cost of merchandise including collection fees.

5. Warehouse storage fees.

| Schedule Of Trailer Interchange Coverage | | |
|---|---|---|
| **Coverages** | **Limit Of Insurance And Deductible** | **Estimated Premium** |
| **Comprehensive** | Least Of Actual Cash Value, Cost Of Repair Or<br>$         **Limit Of Insurance** | $ See Item 6 of Auto<br>Declarations if Applicable |
| | $         **Deductible For Each<br>Covered Trailer** | |
| **Specified<br>Causes Of Loss** | Least Of Actual Cash Value, Cost Of Repair Or<br>$         **Limit Of Insurance** | $ See Item 6 of Auto<br>Declarations if Applicable |
| | $         **Deductible For Each<br>Covered Trailer** | |
| **Collision** | Least Of Actual Cash Value, Cost Of Repair Or<br>$         **Limit Of Insurance** | $ See Item 6 of Auto<br>Declarations if Applicable |
| | $         **Deductible For Each<br>Covered Trailer** | |
| **Total Trailer Interchange Premium** | | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

© Insurance Services Office, Inc., 2011      **CA 23 30 10 13**

**Physical Damage Coverage**

The **Physical Damage Coverage** Exclusion in Paragraph **C.** of this endorsement is removed for each of the following coverages indicated by an "X" in the box.

[X] **Comprehensive**
[X] **Specified Causes Of Loss**
[X] **Collision**

For any operations you engage in as a "motor carrier", the policy is changed as follows:

**A. Who Is An Insured** under **Covered Autos Liability Coverage** is replaced by the following:

  **1. Who Is An Insured**

  The following are "insureds":

  **a.** You for any covered "auto".

  **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

    **(1)** The owner, or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

    **(2)** Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

    **(3)** Someone using a covered "auto" while they are working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

    **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

    **(5)** A partner (if you are a partnership) or member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

  **c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

  **d.** The lessor of a covered "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a "motor carrier" for hire.

  **e.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

  However, none of the following is an "insured":

  **a.** Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

    **(1)** If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

    **(2)** If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

  However, Paragraph **a.** above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written lease agreement in which you have held that "motor carrier" harmless.

  **b.** Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" occurs while the "trailer" is detached from a covered "auto" you are using and:

    **(1)** Is being transported by the carrier; or

    **(2)** Is being loaded on or unloaded from any unit of transportation by the carrier.

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 66 of 103

**B.** The following **Trailer Interchange Coverage** provisions are added:

**1. Coverage**

**a.** We will pay all sums you legally must pay as damages because of "loss" to a "trailer" you don't own or its equipment. The "trailer" must be in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailer" while in your possession.

**b.** We will pay for "loss" to the "trailer" under:

**(1) Comprehensive Coverage**

From any cause except:

**(a)** The "trailer's" collision with another object; or

**(b)** The "trailer's" overturn.

**(2) Specified Causes Of Loss Coverage**

Caused by:

**(a)** Fire, lightning or explosion;

**(b)** Theft;

**(c)** Windstorm, hail or earthquake;

**(d)** Flood;

**(e)** Mischief or vandalism; or

**(f)** The sinking, burning, collision or derailment of any conveyance transporting the "trailer".

**(3) Collision Coverage**

Caused by:

**(a)** The "trailer's" collision with another object; or

**(b)** The "trailer's" overturn.

**c.** We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for any "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**d. Coverage Extensions**

The following applies as **Supplementary Payments.** We will pay for you:

**(1)** All expenses we incur.

**(2)** The cost of bonds to release attachments, but only for bond amounts within our Limit of Insurance.

**(3)** All reasonable expenses incurred at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(4)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(5)** All interest on the full amount of any judgment that accrues after entry of the judgment, but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**2. Exclusions**

**a.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**(1) Nuclear Hazard**

**(a)** The explosion of any weapon employing atomic fission or fusion; or

**(b)** Nuclear reaction or radiation, or radioactive contamination, however caused.

**(2) War Or Military Action**

**(a)** War, including undeclared or civil war;

**(b)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(c)** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**b.** We will not pay for loss of use.

**c. Other Exclusions**

We will not pay for "loss" due and confined to:

**(1)** Wear and tear, freezing, mechanical or electrical breakdown.

© Insurance Services Office, Inc., 2011

CA 23 30 10 13

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 67 of 103

**(2)** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**3. Limit Of Insurance**

The most we will pay for "loss" to any one "trailer" is the least of the following amounts:

**a.** The actual cash value of the damaged or stolen property at the time of the "loss";

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality; or

**c.** The Limit Of Insurance shown in the Schedule.

**4. Deductible**

For each covered "trailer", our obligation to pay:

**a.** The actual cash value of the damaged or stolen property at the time of the "loss" will be reduced by the applicable deductible shown in the Schedule;

**b.** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality will be reduced by the applicable deductible shown in the Schedule; or

**c.** The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Schedule prior to the application of the Limit Of Insurance shown in the Schedule.

**C. Physical Damage Coverage** is changed by adding the following exclusion:

We will not pay for "loss" to:

Any covered "auto" while in anyone else's possession under a written trailer interchange agreement. But this exclusion does not apply to a loss payee; however, if we pay the loss payee, you must reimburse us for our payment.

**D.** The **Other Insurance** Condition is replaced by the following:

**5. Other Insurance – Primary And Excess Insurance Provisions**

**a.** While any covered "auto" is hired or borrowed from you by another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between you as the lessor and the other "motor carrier" as the lessee requires you to hold the lessee harmless.

**(2)** Excess over any other collectible insurance if a written agreement between you as the lessor and the other "motor carrier" as the lessee does not require you to hold the lessee harmless.

**b.** While any covered "auto" is hired or borrowed by you from another "motor carrier", this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Primary if a written agreement between the other "motor carrier" as the lessor and you as the lessee does not require the lessor to hold you harmless, and then only while the covered "auto" is used exclusively in your business as a "motor carrier" for hire.

**(2)** Excess over any other collectible insurance if a written agreement between the other "motor carrier" as the lessor and you as the lessee requires the lessor to hold you harmless.

**c.** While a covered "auto" which is a "trailer" is connected to a power unit, this Coverage Form's Covered Autos Liability Coverage is:

**(1)** Provided on the same basis, either primary or excess, as the Covered Autos Liability Coverage provided for the power unit if the power unit is a covered "auto".

**(2)** Excess if the power unit is not a covered "auto".

**d.** Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered "auto".

**e.** Except as provided in Paragraphs **a., b., c.** and **d.** above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

**f.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**g.** Regardless of the provisions of Paragraphs **a., b., c., d.** and **e.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

Case 1:18-cv-00100-WO-JEP  Document 3  Filed 02/14/18  Page 68 of 103

**h.** When this Coverage Form and any other Coverage Form or policy cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**E. Additional Definitions**

As used in this endorsement:

**1.** "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

**2.** "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. But for Trailer Interchange Coverage only, "trailer" also includes a container.

© Insurance Services Office, Inc., 2011

**CA 23 30 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# POLLUTION LIABILITY – BROADENED COVERAGE FOR COVERED AUTOS – BUSINESS AUTO AND MOTOR CARRIER COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6. Care, Custody Or Control** does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

b. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

© Insurance Services Office, Inc., 2011

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 70 of 103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERED AUTO DESIGNATION SYMBOL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below:

| |
|---|
| **Named Insured:** Caroline Trucking Inc |
| **Endorsement Effective Date:** 09/25/2017 |

**Section I – Covered Autos** in the Business Auto and Motor Carrier Coverage Forms and **Section I – Covered Autos Coverages** in the Auto Dealers Coverage Form are amended by adding the following:

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols may be used (in addition to the numerical symbols described in the Coverage Form) to describe the "autos" that may be covered "autos". The entry of one of these symbols next to a coverage on the Declarations will designate the only "autos" that are covered "autos".

| Symbol | | Description Of Covered Auto Designation Symbols |
|:---:|:---:|---|
| | | For use with the Business Auto Coverage Form |
| 10 | = | Only those "autos" you lease, hire, rent or borrow without a driver. This does not include any "auto" you lease, hire, rent, or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 11 | = | Any "auto" 10,000 GVW or greater. |
| 12 | = | Only those "trailers" you don't own while in your possession and only while attached to an "auto" that is a covered "auto" for liability or physical damage coverage. |
| 13 | = | Only those "trailers" you do not own while in your possession under a written "trailer" or equipment interchange agreement in which you assume liability for "loss" to the "trailers" while in your possession. |
| 14 | = | Only those "autos" you report to us for premium computation purposes prior to any "accident" or within 45 days of acquiring, leasing, hiring or borrowing. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| 85 | = | Only those "autos" you own or lease if their description and stated values have been reported to us in writing for purposes of premium computation prior to the beginning of the policy or within 30 days of acquisition or lease. |

 © Insurance Services Office, Inc., 2011

| For use with the Auto Dealers Coverage Form | | |
|---|---|---|
| **32** | = | |

| Symbol | Description Of Covered Auto Designation Symbols | |
|---|---|---|
| | For use with the Motor Carrier Coverage Form | |
| **72** | = | |
| **73** | = | |

© Insurance Services Office, Inc., 2011    **CA 99 54 10 13**

Case 1:18-cv-00100-WO-JEP    Document 3    Filed 02/14/18    Page 72 of 103



# CANAL

Greenville, SC

POLICY NUMBER: I-824170001-1                                                    **COMMERCIAL AUTO**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DUMP SITE POLLUTION EXCLUSION

This endorsement modifies insurance provided under the following:

   BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective:   09/25/2017 | Countersigned By: |
|---|---|
| Named Insured: Caroline Trucking Inc | (Authorized Representative) |

**Section II. B. Exclusions**

The following exclusion is added:

15. "Bodily injury" or "property damages" arising out of your actual or alleged pollution of any dump site or the actual or threatened pollution of the property of others resulting from such dumping operations.

IA 09 CW 0906                                                                    Page 1 of 1



**THIS ENDORSEMENT CHANGES THE POLICY PLEASE READ IT CAREFULLY.**

# PHYSICAL DAMAGE COVERAGE CHANGES

This endorsement modifies insurance under the following:

BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

This endorsement provides only those coverages where a Physical Damage premium is shown in the Declarations. Each of these coverages applies only to the vehicles shown as covered "autos".

**A.** The following is added to Paragraph **A.4., Coverage Extensions,** of **SECTION III – PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM:

    **c. Towing**

        When a covered "auto" is involved in a covered "accident" or "loss", we will pay the reasonable towing cost to the nearest repair facility capable of making the necessary repairs, unless we agree with you in advance to tow to another repair facility. We will also pay reasonable storage costs of a covered "auto" after towing while awaiting repair. We will pay only charges to a licensed towing service.

**B.** The following replaces Paragraph **C., Limits of Insurance** of **SECTION III – PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM:

    **1.** We will pay for "loss" as follows:

        **a.** Total Losses Subject to a "Finance Agreement"

        With respect to a covered "auto" the most we will pay for a total "loss" where a "finance agreement" exists and the stated value shown in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports is equal to or greater than the "outstanding financial obligation" is the greater of:

        **(1)** The "outstanding financial obligation" under a "finance agreement" for the covered "auto" at the time of loss; or

        **(2)** The actual cash value of the covered "auto" at the time of the "loss";

        **b.** Other Losses

        The most we will pay for any other "loss" in any one "accident" to a covered "auto" is the lesser of:

        **(1)** The amount shown as the stated value in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports;

        **(2)** The actual cash value of the damaged or stolen property as of the time of the "loss"; or

        **(3)** The cost of repairing or replacing the damaged or stolen property with other of like kind and quality.

        With respect to a covered "auto" not shown in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports, the most we will pay for "loss" is the lesser of **(2)** or **(3)** above, reduced by the largest deductible applied to a covered "auto" of the same type that is shown in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports.

    **2.** The most we will pay for all electronic equipment that reproduces, receives or transmits audio,

Case 1:18-cv-00100-WO-JEP Document 3 Filed 02/14/18 Page 74 of 103

visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

   **a.** Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

   **b.** Removable from a permanently installed housing unit as described in Paragraph **2.a.** above; or

   **c.** An integral part of such equipment as described in Paragraphs **2.a.** and **2.b.** above.

  **3.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

  **4.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**C.** The following replaces Paragraph **D., Deductible** of **SECTION III – PHYSICAL DAMAGE COVERAGE** of the BUSINESS AUTO COVERAGE FORM:

  **1.** For each covered "auto", our obligation to pay:

   **a.** The actual cash value of the damaged or stolen property as of the time of the "loss" will be reduced by the applicable deductible shown in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports;

   **b.** The cost of repairing or replacing the damaged or stolen property with property of like kind and quality will be reduced by the applicable deductible shown in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports; or

   **c.** The damages for "loss" that would otherwise be payable will be reduced by the applicable deductible shown in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports prior to the application of the Limit of Insurance shown in the Vehicle Schedule or the Declarations or the Monthly Vehicle Reports.

  **2.** Any Comprehensive Coverage Deductible shown in the Vehicle Schedule or the

Declarations or the Monthly Vehicle Reports does not apply to "loss" caused by fire or lightning.

**D.** The following is added to Paragraph **A., Loss Conditions**, of **SECTION IV – BUSINESS AUTO CONDITIONS** of the BUSINESS AUTO COVERAGE FORM:

  **6. Salvage**

   If we pay because of a total "loss" covered by PHYSICAL DAMAGE COVERAGE, we will be entitled to take title and possession of the damaged property for salvage. There shall be no abandonment to the company.

**E.** The following is added to **SECTION V - DEFINITIONS** of the BUSINESS AUTO COVERAGE FORM:

  "Finance agreement" means a written lease or loan contract, entered into, as a part of your business, pertaining to the lease or purchase by you of a covered "auto", and subject to a valid promissory note or written payment obligation contained in a lease, security agreement, or other written agreement establishing a security interest, executed concurrently with the purchase or lease of the covered "auto".

  "Outstanding Financial Obligation" is the amount owed under a "finance agreement" at the time of "loss", but does not include:

  **1.** Overdue "finance agreement" payments, including any type of late fees or penalties;

  **2.** Financial penalties imposed under a "finance agreement" for excessive use, abnormal wear and tear or high mileage;

  **3.** Security deposits not normally refunded by the lessor or lender;

  **4.** Cost of "finance agreement" related products such as warranties, Life Insurance, Health, Accidental or Disability insurance purchased by you;

  **5.** Carry-over balances from previous "finance agreements" or other amounts not associated with the covered "auto"; or

**6.** Unpaid principal included in the outstanding "finance agreement" balance that was not used by you to purchase the covered "auto".



# CANAL

Greenville, SC

# MOTOR TRUCK CARGO COVERAGE FORM – NORTH CAROLINA

Various provisions in this Coverage Form restrict coverage. Read the entire Coverage Form carefully to determine rights, duties and what is and is not insured.

Throughout this Coverage Form, the words "you" and "your" refer to the Named Insured shown in the Motor Truck Cargo Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION II C. – Definitions**.

## SECTION I

### A. Coverage

We will pay for "loss" to Covered Cargo from any Covered Cause of Loss while in the United States and Canada.

**1. Covered Cargo**

Covered Cargo as used in this Coverage Form means:

a. Goods and merchandise which are the property of others, "in due course of transit", on a "scheduled vehicle" or "trailer" or in the actual process of being loaded or unloaded by you within one-thousand (1000) feet of the "scheduled vehicle" or "trailer" under a written bill of lading, tariff or shipping receipt; or

b. Goods and merchandise which are owned by you and transported as cargo on a "scheduled vehicle" or "trailer" or in the actual process of being loaded or unloaded by you within one-thousand (1000) feet of the "scheduled vehicle" or "trailer."

However, personal effects are not considered Covered Cargo.

**2. Cargo Not Covered**

Covered Cargo does not include:

a. Contraband or illegally transported cargo;

b. Explosives, fireworks or radioactive material;

c. Securities or evidences of debt;

d. Money, currency, gold or silver bullion or platinum;

e. Precious stones, jewelry or similar valuables;

f. Furs and garments trimmed with fur;

g. Cargo on a "scheduled vehicle" or "trailer" at any location for more than seventy two (72) hours from the time the "scheduled vehicle" or "trailer" arrives at that location;

h. Animals, unless death results or is made necessary within twenty-four (24) hours by a Covered Cause of Loss or unless they escape or stray from the scene of "loss" and cannot be located, but only if the escape or straying is caused by a Covered Cause of Loss;

i. Baled cotton, if the cotton was ginned within the previous seventy-two (72) hours prior to loading on a "scheduled vehicle" or "trailer;

j. Autos, motor homes, recreational vehicles, mobile homes, campers, boats, buildings, milk in bulk, bulk liquid (tankers), eggs, live animals, glass, pottery and propane, unless the "loss" is directly caused by:

(1) fire, lightning or explosion;

(2) windstorm;

(3) collision of a "scheduled vehicle", "trailer" or load with another vehicle or object;

(4) loading and unloading of autos, motor homes, recreational vehicles, campers, boats or building by you within one-thousand (1000) feet of a "scheduled vehicle" or "trailer";

(5) overturn of a "scheduled vehicle" or "trailer";

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 77 of 103

(6) collapse of bridge, wharf, dock, platform or culvert;

(7) stranding, sinking, burning, or collision on any ferry;

(8) flood, meaning the rising of any natural body of water; or

(9) theft, but excluding pilferage by you or your employees, anyone with a financial interest in the cargo or their employees, authorized representatives or anyone else entrusted with the cargo.

**k.** Cargo for which you are responsible in your capacity as either a freight forwarder or transportation broker.

**3. Covered Cause of Loss**

Covered Cause of Loss means "loss" for which you are legally liable, except as excluded or limited, while Covered Cargo is in your care, custody or control as a motor carrier or "loss" to cargo you own.

**B. Exclusions**

**1.** We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a.** Governmental Action

Seizure or destruction of covered cargo by order of governmental authority.

We will pay for acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this coverage part.

**b.** Nuclear Hazard

(1) Any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination from any other cause.

We will pay for direct "loss" caused by resulting fire if the fire would be covered under this coverage part.

**c.** War and Military Action

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by a government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by a governmental authority in hindering or defending against any of these.

**d.** Delay, loss of market, loss of use, interruption of business, consequential loss of any nature;

**e.** Breakdown or malfunction of refrigeration equipment or its associated component parts including ductwork;

**f.** Any loss due to change in temperature unless the failure is caused by or results from fire, lightning, explosion, collision, overturn of a "scheduled vehicle" or "trailer", or flood, meaning the rising of any natural body of water;

**g.** Collapse or failure by sagging, warping or twisting of the frame, undercarriage or suspension system of the trailer, container or other vehicle being towed as Covered Cargo by the "scheduled vehicle" including but not limited to axles, wheels, tongue or tires;

**h.** Liability assumed under a written or oral contract;

**i.** Intentional, dishonest or criminal acts:

(1) by you, or by any of your employees;

(2) by anyone authorized to act for you;

(3) by anyone to whom the property is entrusted; or

(4) by anyone who has a financial interest.

**j.** Your operation as rigger, hoister, erector, installer, dismantler, including setting up of mobile homes;

**k.** Your neglect to use all reasonable means to save and preserve the covered cargo at the time of and after any Covered Cause of Loss ;

**l.** Abandonment of Covered Cargo;

**m.** Unexplained or mysterious disappearance; or

**n.** Loss to tarpaulins, chains, fittings or intermodal containers.

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 78 of 103

## C. Extensions of Coverage

### 1. Debris Removal

We will pay your expense to remove the debris of Covered Cargo as a result of a Covered Cause of Loss. The most we will pay in any one occurrence is the limit shown under Extensions of Coverage for Debris Removal on the Motor Truck Cargo Declarations page.

### 2. Reusable Packing Containers

We will pay those sums you become legally obligated to pay because of a Covered Cause of Loss to animal pens, poultry cages, metal pallets, skids and similar reusable packing containers. For the purpose of this extension of coverage, intermodal containers and wooden pallets are not reusable packing containers.

The most we will pay under this coverage is the limit shown under Extensions of Coverage for Reusable Packing Containers on the Motor Truck Cargo Declarations page.

### 3. Freight Charges

We will pay the earned freight charges you are unable to collect as a carrier resulting from a Covered Cause of Loss. The most we will pay in any one occurrence is the limit shown under Extensions of Coverage for Freight Charges on the Motor Truck Cargo Declarations page.

### 4. Loss Mitigation Expense

We will pay for reasonable costs you incur to protect or mitigate any further "loss" or potential "loss" when:

a. The Covered Cargo has sustained direct physical "loss" by a Covered Cause of Loss; or

b. The Covered Cargo is in imminent danger of sustaining direct physical "loss" by a Covered Cause of Loss.

The most we will pay in any one occurrence is the limit shown under Extensions of Coverage for Loss Mitigation Expense on the Motor Truck Cargo Declarations page.

## D. Deductible

We will not pay for loss in any one occurrence until the amount of "loss" exceeds the deductible amount shown in the Motor Truck Cargo Declarations. We will then pay the amount of adjusted "loss" in excess of the deductible, up to the applicable Limit of Liability.

However, the deductible does not apply to the Extensions of Coverage.

## E. Limit of Liability

The most we will pay in any one occurrence for "loss" to Covered Cargo:

1. On a "scheduled vehicle" or "trailer" is the Limit of Liability for that "scheduled vehicle" shown on the Motor Truck Cargo Declarations page;

2. On a "newly acquired vehicle" is the lowest limit for any "scheduled vehicle" shown on the Motor Truck Cargo Declarations page.

The most we will pay under 1 and 2 above will be no more than the "Catastrophe Limit" shown on the Motor Truck Cargo Declarations page.

## SECTION II

## A. Loss Conditions

### 1. Abandonment

There can be no abandonment of any Covered Cargo or property to us.

### 2. Your Duties In The Event of "Loss"

You must see that the following are done in the event of "loss":

a. You must give us immediate notice of the "loss" including a description of the Covered Cargo, and a description of how, when and where the "loss" occurred.

b. You must notify the police if a law may have been broken.

c. You must take reasonable steps to protect the Covered Cargo from further damage. You should keep a record of your expenses for consideration in the settlement of the claim.

d. You must permit us to inspect the Covered Cargo and records proving "loss".

e. You must make no statement that will assume obligation or admit any liability concerning the Covered Cargo "loss" without our consent.

f. If requested, you must permit us to question you under oath about any matter relating to your claim or this insurance, including your books and records. You must sign your answers.

g. If this Coverage Form is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 79 of 103

**h.** You must send us a signed, sworn statement of "loss" containing information we request within sixty (60) days after our request. We will supply you with necessary forms.

**i.** You must cooperate with us in the investigation or settlement of any claim.

**j.** You must promptly send us any legal notices you receive concerning "loss" to Covered Cargo.

### 3. Loss Payment

We will pay any covered "loss" within thirty (30) days after we reach agreement with you or the entry of a final judgment. We will not be liable for any part of a "loss" that has been paid by others.

### 4. Other Insurance

You may have other insurance subject to similar terms, conditions, and provisions as the insurance provided by this Coverage Form. If you do, we will pay our share of the covered "loss". Our share is the proportion that the applicable limit of liability under this Coverage Form bears to the total of the limits of liability of all policies covering on the same basis.

If there is other insurance covering the same "loss", other than that described in the paragraph above, we will pay only for the amount of the covered "loss" in excess of the amount due from that other insurance, whether you can collect on it or not. However, we will not pay more than our applicable limit of liability.

### 5. Pair, Sets or Parts

In case of "loss" to any part of a pair or set, we may repair or replace any part to restore the pair or set to its value before the "loss" or pay the difference between the value of the pair or set before and after the "loss."

However, in case of "loss" to any part of Covered Cargo consisting of several parts when complete, in no event will we pay more than the value of the lost or damaged part.

In the event of a total loss to one section of a multi-section mobile home while attached to a "scheduled vehicle" or "trailer" and it is not possible to repair or replace the damaged section, the company at its option may agree to pay for all sections of the mobile home and take the title to the undamaged section(s).

### 6. Privilege to Adjust With Owner

In the event of "loss" to Covered Cargo, we have the right to settle the "loss" with the owners of the Covered Cargo. A receipt for payment from the owners of that cargo will satisfy any claim of yours.

### 7. No Duty to Defend

We have the right to provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

### 8. Recoveries

Any recovery of salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been recovered.

### 9. Subrogation and Rights of Recovery Against Others

If any person, organization, company or corporation to or for whom we make payment of claim under this Coverage Form has rights to recover damages from another party or parties, those rights are transferred to us. That person, organization, company or corporation must do everything necessary to secure our rights and must do nothing after the "loss" to impair them.

### 10. No Benefit to Bailee

No person or organization, other than you, having custody of the Covered Cargo, will benefit from this insurance.

### 11. Policy Period

We cover "loss" to Covered Cargo commencing during the policy period shown on the Motor Truck Cargo Declarations Page.

### 12. Legal Action

No one may bring legal action against us unless the terms of this coverage have been complied with and the action is brought within three (3) years after you first have knowledge of the "loss".

### 13. Concealment, Fraud or Misrepresentation

This coverage is void in any case of fraud, intentional concealment, or misrepresentation of a material fact by you or any other party at any time as respects the coverage, the Covered Cargo, your interest in the Covered Cargo or a claim under the policy.

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 80 of 103

## B. Other Terms

### 1. Valuation

In the event of "loss", at our option we will pay the lesser of:

a. the cost to replace the Covered Cargo with substantially identical property; or

b. the cost to repair the Covered Cargo to its physical condition immediately before the "loss" excluding diminution of value; or

c. take all or part of the cargo at the agreed or appraised value.

### 2. Fines, Assessments or Penalties

We will not pay any costs, penalties, or punitive damages as a result of your violation of law or regulation.

## C. Definitions

1. "Catastrophe Limit" means the most we will pay for any one event or continuing events resulting in "loss" to covered cargo regardless of the number of "scheduled vehicles" or locations involved.

2. "In due course of transit" means being shipped from the time you assume care, custody or control of the Covered Cargo for the purpose of the actual movement of Covered Cargo from the point of shipment bound for a specific destination and ending when one of the following first occurs:

   a. The Covered Cargo is accepted by, or on behalf of, the consignee at the intended destination; or

   b. The Covered Cargo is accepted by, or on behalf of, the consignee at any intermediate point short of reaching the original intended destination.

   c. Seventy two (72) hours after arrival at destination; or

   d. Any other stop that exceeds seventy two (72) hours.

   "In due course of transit" includes ordinary, reasonable and necessary stops, interruptions, delays or transfers incidental to the route and method of shipment.

3. "Loss" means direct accidental physical loss or damage.

4. "Newly acquired vehicle" means an owned power unit titled to the Named Insured or a vehicle "leased" to the Named Insured and reported to us within thirty (30) days of acquisition.

5. "Scheduled vehicle" means a power unit listed on the Motor Truck Cargo Declarations page. "Scheduled vehicle" also means

   a. A power unit which permanently replaces a power unit you previously owned that had coverage on this Coverage Form. You must report the change and tell us you want us to cover the replacement power unit within thirty (30) days of acquisition.

   b. A temporary non-owned substitute power unit used with the permission of its owner as a temporary substitute for a power unit listed on the Motor Truck Cargo Declarations page that is out of service because of its breakdown, repair, servicing, loss or destruction. A temporary substitute power unit does not include a leased or borrowed power unit with a driver.

   c. An owned additional "newly acquired vehicle" but only if we already cover all power units you own that are used to transport Covered Cargo.

6. "Trailer" means a non self-propelled vehicle "in due course of transit" by a "scheduled vehicle" used for the purpose of transporting Covered Cargo.

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 81 of 103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NORTH CAROLINA INLAND MARINE/CARGO POLICY CONDITIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation Requirements**

   a. **Policies In Effect Less Than 60 Days**

      If this policy has been in effect for less than 60 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   b. **Policies In Effect More Than 60 Days**

      If this policy has been in effect for 60 days or more, or is a renewal of a policy we issued, we may cancel this policy prior to the:

      (1) Expiration of the policy term; or

      (2) Anniversary date, stated in the policy only for one or more of the following reasons:

         (a) Nonpayment of premium;

         (b) An act or omission by the insured or his or her representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining this policy, continuing this policy or presenting a claim under this policy;

         (c) Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;

         (d) Substantial breach of contractual duties, conditions or warranties that materially affects the insurability of the risk;

         (e) A fraudulent act against us by the insured or his or her representative that materially affects the insurability of the risk;

         (f) Willful failure by the insured or his or her representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by us;

         (g) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30;

         (h) Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk;

         (i) A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the laws of North Carolina; or

         (j) You fail to meet the requirements contained in our corporate charter, articles of incorporation or by-laws when we are a company organized for the sole purpose of providing members of an organization with insurance coverage in North Carolina.

We will mail or deliver written notice of cancellation to the first Named Insured at least:

    **(i)** 15 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    **(ii)** 30 days before the effective date of cancellation if we cancel for any other reason.

**c.** Cancellation for nonpayment of premium will not become effective if you pay the premium amount due before the effective date of cancellation.

**d.** We may also cancel this policy for any reason not stated above provided we obtain your prior written consent.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured or your agent any premium refund due. If we cancel, the refund will be pro rata. If the fist Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following provisions supersede any other provisions to the contrary:

  **1. Nonrenewal**

    **a.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations written notice of nonrenewal at least 45 days prior to the:

      **(1)** Expiration of the policy if this policy has been written for one year or less; or

      **(2)** Anniversary date of the policy if this policy has been written for more than one year or for an indefinite term.

    **b.** We need not mail or deliver the notice of nonrenewal if you have:

      **(1)** Insured property covered under this policy, under any other insurance policy;

      **(2)** Accepted replacement coverage; or

      **(3)** Requested or agreed to nonrenewal of this policy.

    **c.** If notice is mailed, proof of mailing will be sufficient proof of notice.

  **2.** The written notice of cancellation or nonrenewal will:

    **a.** Be mailed or delivered to the first Named Insured and any designated mortgagee or loss payee at their addresses shown in the policy, or if not indicated in the policy, at their last known addresses; and

    **b.** State the reason or reasons for cancellation or nonrenewal.

**C. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**D. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**E. Inspections And Surveys**

  **1.** We have the right to:

    **a.** Make inspections and surveys at any time;

    **b.** Give you reports on the conditions we find; and

    **c.** Recommend changes.

  **2.** We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    **a.** Are safe or healthful; or

**b.** Comply with laws, regulations, codes or standards.

**3.** Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**4.** Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**F. Premiums**

The first Named Insured shown in the Declarations:

**1.** Is responsible for the payment of all premiums; and

**2.** Will be the payee for any return premium we pay.

**G. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**H. Appraisal**

If we and you disagree on the value of the property or the amount of loss or damage, either may make written demand for an appraisal of the loss or damage. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss or damage. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**1.** Pay its chosen appraiser; and

**2.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 84 of 103



**CANAL**

Greenville, SC

ISSUE DATE____09/26/2017____

POLICY NUMBER: I-824170001-1

**MOTOR TRUCK CARGO**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMODITY LIST ENDORSEMENT

This endorsement modifies insurance provided under the following:

**MOTOR TRUCK CARGO COVERAGE FORM**

With respect to coverage provided by this endorsement, the provisions of the Coverage apply unless modified by this endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| Endorsement Effective: 09/25/2017 |
| Named Insured: Caroline Trucking Inc |

The premium is based on the commodities transported by the insured as listed below:

Auto Parts and Accessories

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 85 of 103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

*This endorsement modifies insurance provided under the following:*

COMMERCIAL INLAND MARINE COVERAGE PART

## A. Cap On Certified Terrorism Losses

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

## B. Application Of Exclusions

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**IM 71 CW 0315**

**Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was com-
puted based on rates in effect at the time the policy
was issued. On each renewal, continuation, or anni-
versary of the effective date of this policy, we will
compute the premium in accordance with our rates
and rules then in effect.

 © ISO Properties, Inc., 2007 ©

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 87 of 103

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.



**CANAL**
Greenville, SC

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUNITIVE DAMAGES EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
COMMERCIAL GENERAL LIABILITY COVERAGE FORM

With respect to coverage provided by the above Coverage Forms, the provisions of the Coverage Forms apply unless modified by this endorsement.

The policy to which this endorsement is attached is amended by adding the following Exclusion:

This policy does not insure against or provide indemnity for fines, penalties, exemplary or punitive damages or any other type or kind of judgment or award which does not compensate the party benefiting from the award or judgment for any actual "loss" or damage sustained.

This exclusion applies regardless of whether the damages are based upon the "insured's" conduct or the conduct of some other party for whom the "insured" may be legally responsible.

If the exclusion of punitive or exemplary damages is not permitted by the law of the state in which a claim for punitive or exemplary damages is brought, then this exclusion shall limit those damages to the extent permitted by law. In no event shall the total of compensatory and punitive or exemplary damages be payable in excess of the Limit of Insurance provided herein.

This exclusion applies to all coverages under this policy.

**IL 35 CW 1013**

**Page 1 of 1**



# CANAL

Greenville, SC

POLICY NUMBER: I-824170001-1

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMBINED DEDUCTIBLE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR TRUCK CARGO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| Endorsement Effective: 09/25/2017 | Countersigned By: |
|---|---|
| Named Insured: Caroline Trucking Inc | *(signature)* <br> (Authorized Representative) |

When this policy covers both Business Auto Physical Damage and Motor Truck Cargo and an "accident" occurs that results in both a physical damage "loss" and a cargo "loss" the highest deductible amount shown in the Declarations Pages for these coverages will be applied one time.

When this policy covers Business Auto Physical Damage and a "loss" occurs to more than one "covered auto" arising from the same "accident", the highest deductible amount shown in the Declarations pages for this coverage will be applied one time.

If application of the combined deductible results in a deductible higher than would have been charged on a separate basis, the separate deductible amounts will apply.

**IL 49 CW 0107**

**Page 1 of 1**

**CANAL INSURANCE COMPANY - NAIC 10464**
**Bodily Injury and Property Damage Liability**

IDENTIFICATION CARD

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| I-824170001-1 | 09/25/2017 | 09/25/2018 |

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2008 | Freightliner / Cascadia 125 | 1FUJGLCK58LAA7204 |

NAME OF INSURED

Caroline Trucking Inc
565 Mount Zion Church Rd, Stokesdale, NC 27357

AGENT
Risk Placement Services, Inc. dba Edwin M. Rollins
2115 Rexford Rd Ste 520
Charlotte, NC 28211

— — — — — FOLD HERE — — — — —

### IN CASE OF ACCIDENT

1. Obtain names, addresses, and phone numbers of persons involved and witnesses, a police report number, and any insurance information on the other vehicles.

2. Make no statement about the accident to anyone except the police or a representative of Canal Insurance Company.

3. Promptly notify CANAL INSURANCE COMPANY, P.O. Box 7, Greenville, SC (29602) by:
   • calling (800) 452-6911;
   • e-mailing claims@canal-ins.com;
   • faxing (864) 679-2518; or
   • notifying your agent.

   This card must be carried in the vehicle at all times.

Form ID-1                                    (Rev. 9-2003)

---

**CANAL INSURANCE COMPANY - NAIC 10464**
**Bodily Injury and Property Damage Liability**

IDENTIFICATION CARD

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| I-824170001-1 | 09/25/2017 | 09/25/2018 |

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2008 | Freightliner / Cascadia 125 | 1FUJGLCK58LAA7204 |

NAME OF INSURED

Caroline Trucking Inc
565 Mount Zion Church Rd, Stokesdale, NC 27357

AGENT
Risk Placement Services, Inc. dba Edwin M. Rollins
2115 Rexford Rd Ste 520
Charlotte, NC 28211

— — — — — FOLD HERE — — — — —

### IN CASE OF ACCIDENT

1. Obtain names, addresses, and phone numbers of persons involved and witnesses, a police report number, and any insurance information on the other vehicles.

2. Make no statement about the accident to anyone except the police or a representative of Canal Insurance Company.

3. Promptly notify CANAL INSURANCE COMPANY, P.O. Box 7, Greenville, SC (29602) by:
   • calling (800) 452-6911;
   • e-mailing claims@canal-ins.com;
   • faxing (864) 679-2518; or
   • notifying your agent.

   This card must be carried in the vehicle at all times.

Form ID-1                                    (Rev. 9-2003)

---

**CANAL INSURANCE COMPANY - NAIC 10464**
**Bodily Injury and Property Damage Liability**

IDENTIFICATION CARD

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| I-824170001-1 | 09/25/2017 | 09/25/2018 |

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2008 | Freightliner / Cascadia 125 | 1FUJGLCK58LAA7204 |

NAME OF INSURED

Caroline Trucking Inc
565 Mount Zion Church Rd, Stokesdale, NC 27357

AGENT
Risk Placement Services, Inc. dba Edwin M. Rollins
2115 Rexford Rd Ste 520
Charlotte, NC 28211

— — — — — FOLD HERE — — — — —

### IN CASE OF ACCIDENT

1. Obtain names, addresses, and phone numbers of persons involved and witnesses, a police report number, and any insurance information on the other vehicles.

2. Make no statement about the accident to anyone except the police or a representative of Canal Insurance Company.

3. Promptly notify CANAL INSURANCE COMPANY, P.O. Box 7, Greenville, SC (29602) by:
   • calling (800) 452-6911;
   • e-mailing claims@canal-ins.com;
   • faxing (864) 679-2518; or
   • notifying your agent.

   This card must be carried in the vehicle at all times.

Form ID-1                                    (Rev. 9-2003)

---

**CANAL INSURANCE COMPANY - NAIC 10464**
**Bodily Injury and Property Damage Liability**

IDENTIFICATION CARD

| POLICY NUMBER | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| I-824170001-1 | 09/25/2017 | 09/25/2018 |

| YEAR | MAKE/MODEL | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| 2008 | Freightliner / Cascadia 125 | 1FUJGLCK58LAA7204 |

NAME OF INSURED

Caroline Trucking Inc
565 Mount Zion Church Rd, Stokesdale, NC 27357

AGENT
Risk Placement Services, Inc. dba Edwin M. Rollins
2115 Rexford Rd Ste 520
Charlotte, NC 28211

— — — — — FOLD HERE — — — — —

### IN CASE OF ACCIDENT

1. Obtain names, addresses, and phone numbers of persons involved and witnesses, a police report number, and any insurance information on the other vehicles.

2. Make no statement about the accident to anyone except the police or a representative of Canal Insurance Company.

3. Promptly notify CANAL INSURANCE COMPANY, P.O. Box 7, Greenville, SC (29602) by:
   • calling (800) 452-6911;
   • e-mailing claims@canal-ins.com;
   • faxing (864) 679-2518; or
   • notifying your agent.

   This card must be carried in the vehicle at all times.

Form ID-1                                    (Rev. 9-2003)

Form E
# UNIFORM MOTOR CARRIER BODILY INJURY AND PROPERTY
## DAMAGE LIABILITY CERTIFICATE OF INSURANCE
*(Executed in Quadruplicate)*

Filed with ___**NORTH CAROLINA DIV OF MOTOR VEHICLES**_____(hereinafter called Commission)

(Name of Commission)

THIS IS TO CERTIFY, THAT the    Canal Insurance Company

(herinafter called Company) of    **400 East Stone Ave., Greenville, SC 29601**

has issued to _____    Caroline Trucking Inc

(Name of Motor Carrier)

of _____    565 Mount Zion Church Rd, Stokesdale, NC 27357

(Address of Motor Carrier)

a policy or policies of insurance effective from _____    09/25/2017    _____ 12:01 A.M. standard time at the address of the insured stated in said policy or policies and continuing until canceled as provided herein, which, by attachment of the Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement, has or have been amended to provide automobile bodily injury and property damage liability insurance covering the obligations imposed upon such motor carrier by the provisions of the motor carrier law of the State in which the Commission has jurisdiction or regulations promulgated in accordance therewith.

Whenever requested, the Company agrees to furnish the Commission a duplicate original of said policy or policies and all endorsements thereon.

This Certificate and the endorsement described herein may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the Company or the insured giving thirty (30) days' notice in writing to the State Commission, such thirty days' notice to commence to run from the date notice is actually received in the office of the Commission.

Countersigned at _____    **400 EAST STONE AVE.**_____    **GREENVILLE**_____    **SC**_____    **29601**

(Street Address)                (City)                    (State)            (Zip code)

this _____ 25 _____ day of _____ September _____ 2017 _____    *Sammy Vaughn*

_____

Authorized Company Representative

Insurance Company File No. _____    824170001    _____

(Policy Number)

IRB 3639B
UFC-1

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. It is estimated that an average of 10 minutes per response is required to complete this collection of information. This estimate includes time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Comments concerning the accuracy of this burden estimate or suggestions for reducing this burden should be directed to the Federal Highway Administration, 400 7th St., SW, Washington, DC 20590.

## MOTOR CARRIER AUTOMOBILE BODILY INJURY AND PROPERTY DAMAGE LIABILITY CERTIFICATE OF INSURANCE

filed with:

Received:

Date

Filer Account No. _____

FEDERAL HIGHWAY ADMINISTRATION

OFFICE OF MOTOR CARRIERS

LICENSING & INSURANCE DIVISION

400 VIRGINIA AVE., SW, SUITE 600

Washington, DC 20024

APPROVED BY OMB
2125-0570
Expires: 11/30/2001

FHWA Docket No.

MC ____653492____

FF _____

This is to certify, that the _____ Canal Insurance Company _____
(NAME OF INSURANCE COMPANY)

(hereinafter called Company) of _____ P.O. BOX 7 GREENVILLE, SC 29602 _____
(HOME OFFICE ADDRESS OF INSURANCE COMPANY)

has issued to _____ Caroline Trucking Inc _____
(NAME OF MOTOR CARRIER OR FREIGHT FORWARDER)

of _____ 565 Mount Zion Church Rd, Stokesdale, NC 27357 _____
(ADDRESS OF MOTOR CARRIER OR FREIGHT FORWARDER)

insurance under terms described on the back of this form to provide coverage as follows: CHECK AS APPLICABLE:

Full Security Limits Required in Title 49 of the Code of Federal Regulations: ☐ Under Section 387.303(b)(1)   ☐ Under Section 387.303(b)(2)

Security Limits Required under Section 387.303(b)(1) or 387.303(b)(2) of the same Title as follows:
☒ This insurance is primary and the company shall not be liable for amounts in excess of $ 750000 _____ for each accident.

☐ This insurance is excess and the company shall not be liable for amounts in excess of $ _____ for each accident in excess of
the underlying limit of $ _____ for each accident.

Effective from 09/25/2017  12:01 a.m. __standard time at the address of the Insured as stated in said policy or policies) and continuing until cancelled
as provided in the rules and regulations under Section 13906 of Title 49 of the United States Code.

Countersigned at ___ P.O. BOX 7 _____ GREENVILLE _____ SC _____ 29602 ___ Date 09/25/2017 ___
                        Street Address              City              State              Zip

Insurance Company Policy No. _____ 824170001 _____          Risk Placement Services, Inc. dba Edwin M.
                                  (Policy Number)                    (Issuing Office - Full Name of Agency or Branch)

_____
(Signature of Authorized Representative)

Form B.M.C. 91X                                                                          MC 1614b (12-98)

The receipt of this certificate by the FHWA certifies that a policy or policies of Public Liability (or Automobile Bodily Injury and Property Damage Liability) insurance has been issued by the company identified on the face of this form, that the company is qualified to make this filing under Section 387.315 or Section 367.411 of Title 49 of the Code of Federal Regulations, and that by the attachment of endorsement BMC90, MCS90 or a form of similar import prescribed by the U.S. Department of Transportation, Federal Highway Administration, is amended to provide the coverage or security for the protection of the public required under Section 387.303 of Title 49 of the Code of Federal Regulations. The amendment governs the operation, maintenance, or use of motor vehicles under certificate or permit issued to the Insured by the Federal Highway Administration or otherwise in transportation subject to Subchapter I or III of Chapter 135, of Title 49 United States Code, and the pertinent rules and regulations of the Federal Highway Administration, regardless of whether or not such motor vehicles are specifically described in the policy or policies. The liability of the Company extends to all losses, damages, injuries, or deaths occurring within the authority granted to the Insured by the Federal Highway Administration or elsewhere.

The endorsement(s) de scribed may not be candled or withdrawn until thirty (30) days after written notice has been submitted to the Federal Highway Administration at its offices in Washington, DC, on the prescribed Form BMC-35, Notice of Cancellation Motor Carrier Policies of Insurance under 49 U.S.C. 13906. Said thirty (30) days notice to commence to run from the date notice is actually received at the office of FHWA.

| USDOT Number: _____ | Date Received: _____ |
|---|---|

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.

 United States Department of Transportation
**Federal Motor Carrier Safety Administration**

### Endorsement for Motor Carrier Policies of Insurance for Public Liability
### under Sections 29 and 30 of the Motor Carrier Act of 1980

# FORM MCS-90

**Issued to** Caroline Trucking Inc _____ **of** _____ NC _____
  *(Motor Carrier name)*                               *(Motor Carrier state or province)*

**Dated at** ___ 14:27 ___ **on this** __ 25 __ **day of** ___ September ___, __ 2017 __

**Amending Policy Number:** _____ 824170001 _____ **Effective Date:** ___ 09/25/2017 ___

**Name of Insurance Company:** _____ Canal Insurance Company _____

              **Countersigned by:** _____ *Tammy Vaughn* _____
                                    *(authorized company representative)*

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown *(check only one)*

- ⦿ *This insurance is primary and the company shall not be liable for amounts in excess of $* ___ 750000 ___ *for each accident*
- ○ *This insurance is excess and the company shall not be liable for amounts in excess of $* _____ *for each accident in excess of the underlying limit of $* _____ *for each accident.*

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: (864) 242-5365 ____.

Cancellation of this endorsement may be effected by the company of the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, DC).

| **Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs.** |
|---|

*(continued on next page)*

# DEFINITIONS AS USED IN THIS ENDORSEMENT

*Accident* includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

*Motor Vehicle* means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

*Bodily Injury* means injury to the body, sickness, or disease to any person, including death resulting from any of these.

*Property Damage* means damage to or loss of use of tangible property.

*Environmental Restoration* means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

*Public Liability* means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

*(continued on next page)*

OMB No.: 2126-0008   Expiration: 01/31/2020

## SCHEDULE OF LIMITS — PUBLIC LIABILITY

| Type of carriage | Commodity transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2, or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

*The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

# Report a Loss



## 24/7 CLAIMS HOTLINE
# 8 0 0 4 5 2 6 9 1 1
### Report All Claims IMMEDIATELY!
A Rapid Response Team* may be deployed for serious injuries or environmental spills.



**Download the Claims Mobile App for quick access at scene of accident.**
canalinsurance.com/mobile-application

## If You Have An Accident:

### 1. Secure Area
- ☐ Turn on 4-way flashers and set up reflectors or flares to warn oncoming traffic.
- ☐ Call police to report accident and emergency medical services for injured parties.

### 2. Obtain Information
- ☐ Gather information on the parties involved and officer investigating and report IMMEDIATELY via the HOTLINE or Mobile App.
- ☐ Take photographs from all four corners of each vehicle involved and the accident scene. Please refer to the mobile app, Report A Loss on our website or the Accident Report for additional help.

### 3. Remember
- ☐ Call your terminal to report the accident. Discuss accident details only with police and those who can prove they represent you and your company.
- ☐ Be polite, especially to the police; however, offer no opinion as to the cause of the accident – in no event admit fault or responsibility for the accident.

**What is a Rapid Response Team?**
A nationwide network of attorneys, adjusters and accident experts that will help to:
1) Protect you and your company's rights
2) Investigate and interview witnesses
3) Preserve and document evidence

**Who will handle my claim?**
A Canal adjuster will contact you and all related parties the same day as reporting the claim or the next business day if reported after 4:00pm ET, on a weekend or a holiday. You may also call 800.452.6911 Monday through Friday, 8:00am – 5:00pm ET to discuss your claim.

**Why is it important to report my claim IMMEDIATELY?**
This ensures the loss can be investigated properly before evidence is no longer available, which helps avoid costly litigation. Statistics indicate that reporting your claim IMMEDIATELY helps Canal to better protect your interests.

**What happens when the investigation is complete?**
Canal will render a decision based on the facts obtained to bring the claim to a fair and equitable resolution.

**What if I get sued?**
Notify the Canal Insurance adjuster IMMEDIATELY if you receive suit papers. There is a short period of time to respond before a default judgment may be taken against you.



*Years Navigating the Risks of The Road*

**Canal** INSURANCE

# Roadside Assistance

**8 0 0 4 5 2 6 9 1 1** | Complimentary Membership!

*Discounted rates for Roadside Assistance provided by Quest Services in partnership with Canal Insurance Company*

## Roadside Assistance gives you access to:



**PREFERRED TOWING**


**FUEL**


**TIRES**

**MOBILE MECHANIC**


**JUMP START**

## Benefits Include:

### Reduction in Expense

Save as much as 35% of normally charged rates on average for mechanical repairs, roadside services and towing.

### 24/7 Call Center

Dedicated and qualified experts available to assist your needs 24/7, 365 days a year.

### #1 Nationally Ranked Towing Network

Nationally ranked towing network will provide quick ETAs and increased service levels.

### Professional Service

Fast and professional on-site service focused on getting you back on the road quickly.

Providing YOU with confidence that you can drive your trucks anywhere in the United States knowing that Roadside Assistance is available to you 24/7, 365 days a year through Canal Insurance's partnership with Quest Services.



Canal's Roadside Assistance Program is designed to provide professionally ranked service at a discount to policyholders in need of roadside assistance. There is no annual fee or charge on your policy.



EASY ACCESS to call as soon as you need help:

## 800.452.6911



Insurance coverage shall not be implied by the Roadside Assistance program. Roadside services are paid by the policyholder not Canal Insurance Company. The use of this program is subject to terms and conditions for Roadside Assistance that can be found at www.canalinsurance.com



**Left Invoice**

864-879-3193
www.servicetransport.com

# INVOICE

| UNIT NO. | | | | DATE | |
|---|---|---|---|---|---|
| 007 | | | | 2-25-17 | |

NAME  Caroline Trucking

ADDRESS

CITY, STATE, ZIP

| SOLD | BY CASH | CHECK | PAYROLL DEDUCTION | | | |
|---|---|---|---|---|---|---|

| QUAN. | | DESCRIPTION | | PRICE | AMOUNT | |
|---|---|---|---|---|---|---|
| 1 | 1 | Radiator | | 285.00 | 285 | 00 |
| 2 | 8 | Coolant | | 12.10 | 96 | 80 |
| 3 | | | | | | |
| 4 | | | | | 6876 | 54 |
| 5 | | | | | | |
| 6 | 104 | Labor | | 75.00 | 7800 | 00 |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | 14276 | 54 |
| 11 | | | | | | |
| 12 | | | | | | |

RECEIVED BY

**Right Invoice**

864-879-3193
www.servicetransport.com

# INVOICE

| UNIT NO. | | | | DATE | |
|---|---|---|---|---|---|
| 007 | | | | 2-25-17 | |

NAME  Caroline Trucking

ADDRESS

CITY, STATE, ZIP

| SOLD | BY CASH | CHECK | PAYROLL DEDUCTION | | | |
|---|---|---|---|---|---|---|

| QUAN. | | DESCRIPTION | PRICE | AMOUNT | |
|---|---|---|---|---|---|
| 1 | | In frame | | | |
| 2 | | | | | |
| 3 | 4 | APL-PA33289 | 10.58 | 42 | 32 |
| 4 | 1 | DDE 23533692 | 267.14 | 267 | 14 |
| 5 | 1 | DDE MDDC 23539137 | 281.59 | 281 | 59 |
| 6 | 1 | DDE R23539316 | 2847.54 | 2847 | 54 |
| 7 | 6 | DDE 23537123 | 24.76 | 148 | 56 |
| 8 | 1 | DDE 235 39103 | 38.53 | 38 | 53 |
| 9 | 1 | DDE 235 39104 | 53.05 | 53 | 05 |
| 10 | 1 | misc Hoses, gaskets, etc | 483.15 | 483 | 15 |
| 11 | 10 | Rotella 15w 40 | 8.30 | 83 | 00 |
| 12 | 2 | oil filters | 8.93 | 17 | 86 |
| | 1 | Turbo | 1230.00 | 1230 | 00 |

RECEIVED BY



# Stokesdale Fire Department
# FIRE INCIDENT REPORT

Station 12 · Phone 643-0790 · Fax 643-0791

Exhibit "D"

NCFIRS ID# 04122

Case 1:18-cv-00100-WO-JEP   Document 3   Filed 02/14/18   Page 101 of 103

## DISPATCH INFORMATION

Date __11/1/17__   Dept. Alarm # __276__   Central Alarm # __17-12053__

| RECEIVED | ALERTED | RESPOND | 10-23 | SIGNAL 50 | COND. 10 | 10-22 | 10-24 | TIME |
|---|---|---|---|---|---|---|---|---|
| 18:18:04 | 18:19:26 | 18:27:03 | 18:34:23 | 20:22:35 | | | 20:22:35 | 02:04:28 |

Officer In Charge __Bucky Sorrell__   Rank __CAPTAIN__

Signature Of O.I.C. __W.A. Sorrell__

Incident Address __565 Mt. Zion Ch. Rd.__   Exact (If Different) _____

Type Situation Found __Working Vehicle Fire.__   Shift ☒ A ☐ B ☐ C

## AID

Auto / Mutual __N/A__ To Whom _____   From Whom _____

## EQUIP.

Station 12 Equip. Responding And Driver's Name

☒ E-12 __D. Smith__      ☐ T-212 _____      ☐ _____
☒ E-212 __B. Carroll__   ☐ B-12 _____       ☐ _____
☒ T-12 __Chandler__      ☐ TK-212 _____     ☐ _____

## TYPE OF CALL

**FIRE**
☐ House
☐ Mobile Home
☐ Bus. Building
☐ Barn / Out Build.
☐ Fire Alarm
☒ Other __VEHICLE__
☐ Mistaken Or False Alarm

**OPEN BURNING**
☐ Grass
☐ Woods
☐ Trash
☐ Control Burn
☐ Other _____
☐ Other _____

Action Taken Upon Arrival __EXTINGUISHMENT.__
__TRACTOR TRAILER CAB WITH SLEEPER.__
__No TRAILER ATTACHED.__

## FIRE INFORMATION

**Owner**
Name __ANDREW DAVIS__   Phone _____ DL # _____
Address __565 Mt. Zion Ch. Rd.   Stokesdale, NC 27357__

**Occupant (s)**
Name _____   Phone _____ DL # _____
(If Different) Address _____

Name __CAROLINE TRUCKING, INC.__   Phone _____ DL # _____
(If Different) Address __565 Mt. Zion Loop   S'Dale__

Name _____   Phone __336 215 0070__ DL # _____
(If Different) Address _____

*Exhibit "C"*

# Chad C. Freeman
**Attorney at Law**
TELEPHONE (336) 751-2918 • Facsimile (336) 753-6605

MOCKSVILLE PHYSICAL ADDRESS:          LEXINGTON PHYSICAL ADDRESS          MAILING ADDRESS:
26 COURT SQUARE                       102 W. 1ˢᵗ AVENUE SUITE C            POST OFFICE BOX 654
MOCKSVILLE, NORTH CAROLINA 27028      LEXINGTON, NC  27292                MOCKSVILLE, NORTH CAROLINA 27028

## ENGAGEMENT LETTER

December 21, 2017

Canal Insurance Company

**RE: Loss incurred by Caroline Trucking Inc.**

To whom it may concern,

      I am representing Caroline Trucking, Inc. in regards to a loss of equipment by fire. It is our contention that your employer Canal Insurance Company has breached the insurance their agreement with Caroline Trucking Inc. It is my understanding that your refusal to cover Caroline Trucking's loss was due in part for demanding information above and beyond that which was specified in the agreement. If you feel that information is still lacking for this claim, please reply with a description of the information and reference the portion of the insurance agreement that requires it. If I do not hear back within 10 days we will proceed with litigation.

Sincerely,

Chad C. Freeman
Attorney at Law



~man

~ue Suite C,

~e 27892

CERTIFIED MAIL

7017 1070 0000 8189 0021


UNITED STATES
POSTAL SERVICE


1024          29201

U.S. POSTAGE
PAID
LEXINGTON, NC
27292
JAN 16, 18
AMOUNT
**$13.70**
R2304E107272-23

Canal Insurance Co.
C/o Corporation Service Co
1703 Laurel St.
Columbia, SC 29201